## Richmond.

### CARR AND ALS. v. MEADE'S EX'X AND ALS.

### SAME v. CLAGETT'S EX'ORS AND ALS.

February 8th, 1883.

1. JURISDICTION—*County courts—Official bonds.*—Remedy by motion on bonds of sheriffs, &c., under § 5, ch. 163, Code 1873, was not taken away from the county courts by § 9, ch. 395, Acts 1872-3, and was in force in 1879.

2. PRACTICE AT COMMON LAW—*Notice.*—To sustain such motion, any notice, however informal, which informs the defendants of the nature and object of the motion, is sufficient.

3. SHERIFFS—*Returns—Amendments.*—Having made return on an execution and on that return, in part, a decree having been entered, in subsequent proceedings against him and his sureties, the sheriff will not be permitted to amend his return, so as to explain it away and enable his sureties to escape liability for his default.

4. EVIDENCE—*Privity.*—The record in proceedings whereby a sheriff's liability—(*e. g.* on his return), has been adjudicated, is admissible as evidence against his sureties; and is *prima facie* proof of their liability, although those sureties were not parties that record.

5. QUÆRE.—Sheriff, having levied an execution, goes out of office without selling the property. May not his successor levy a junior execution on the same property (without prejudice to the first levy), sell the property, return the money to the court, and have it settle conflicting claims and distribute the proceeds?

6. CASE AT BAR.—In 1871, on the entire stock of goods of S. B., a retail storekeeper, execution of F., R. & Co. was levied by W. B., then sheriff. Thereupon came claimants for the goods on divers pretexts, notably, M. and C., who claimed by levy thereon by former sheriff, under senior executions. Sale was made by W. B., sheriff, who then instituted a chancery suit, convening F., R. & Co., M., C. and the other claimants, and had an account of liens and priorities. In 1875 the court decreed that sheriff, W. B., pay out of proceeds to M. and to C. their respective

claims. Sheriff, W. B., squandered the money, and became insolvent. In 1879 M. and C. moved the county court of L. wherein sheriff, W. B., qualified,·for judgment against him and his sureties for the money each was entitled to. Defendants moved to dismiss for want of jurisdiction, and to quash the notice for want of certainty, and to amend return on, the execution—all whereof the county court overruled; but on motion of plaintiffs, admitted as evidence the chancery record, yet on the merits adjudged for defendants. On error, circuit court affirmed the overruling of defendants' motions and the admitting of the record as evidence, but reversed the judgment on the merits, and adjudged to M. and to C. the sums of money each was entitled to, and costs. On error here;

HELD:

1. The county court of L. had jurisdiction to hear and determine the motions of M. and of C. for judgments on the official bond of the sheriff and his sureties.

2. The notice was sufficient.

3. The chancery record was legal evidence against the sureties, and *prima facie* proof of their liability for the default of their principal.

4. Where executions of different dates are levied on a stock of goods fluctuating from sales and purchases, the senior execution has preference *on all* of the goods in the stock before its return day, and the *onus probandi* is on the junior execution creditor, to show that any special articles came into the stock after the return day.

Two causes heard together, on error to judgments of circuit court of Loudoun county, rendered 24th April, 1880, on error to judgments of the county court on motions on notices, made therein by H. O. Clagett and A. H. Rogers, executors of Thomas Clagett, deceased, against William F. Barrett, late sheriff, and his sureties, Josephus Carr, Armistead T. M. Fuller, R. M. Summers, Samuel Carr and Samuel Compher; and by Frances A. Mead, administratrix *de bonis non*, with the will annexed, of Joseph Mead, deceased, against said sheriff and sureties.

The motions were for default of Barrett in failing to pay Clagett's executors $1,202.20 and interest, and Mead's executrix $819.87 and interest, money received from sales by him, as sheriff, of property of·Samuel M. Boss, retail storekeeper in

Leesburg, *all* of which had been levied on by Barrett under an
execution issued in January, 1871, in favor of French, Richards
& Co., but was subject to the senior executions of Clagett's
executors and of Mead's executrix, which had been previously
levied thereon by Summerfield Bolyn, predecessor of Barrett, as
sheriff, though he made no sale.

The notice of the first motion, properly directed, signed,
served and returned, is as follows, to-wit:

"Take notice, that on the first day of the next term of the
county court, to be holden for the county of Loudoun, we shall
move said court for judgment against you for the sum of
$1,202.20, with interest thereon from the 7th day of May, 1875,
being the amount decreed by the circuit court for the county of
Loudoun, at its April term, 1875, in the cause of *Barrett* v.
*French,* then pending therein, to be paid to us as executors of
Thomas H. Clagett, deceased, by said Barrett, sheriff as afore-
said, as one share of the proceeds of certain property of one
S. M. Boss, sold by said Barrett, as sheriff, and for which you
are liable to us by virtue of the bond aforesaid.

The notice of the second motion is similar:

At the hearing, defendants moved (1) to dismiss, on the
ground of want of jurisdiction in the county court; (2) to quash
the notice for want of certainty, and (3) to let the sheriff, Bar-
rett, amend his return on the execution of French, Richards &
Co. The court overruled these motions. That return showed a
levy by Barrett on *the entire stock of goods* of Boss. The object
of the amendment was to show that he had levied that execution
on only goods of the value of some $500, which had come into
the stock after the return day of the older executions previously
levied. By his sale of the goods, Barrett realized $2,304.14,
and in view of the conflicting claims thereto, he, as sheriff, wish-
ing guidance and protection, convened French, Richards & Co.,
Mead's executrix, and other claimants, in chancery in the circuit
court of Loudoun, and had an account of liens and priorities;
and in May, 1875, that court decreed that he pay out of said

proceeds $1,202.20 to Clagett's executors, and $817.87 to Mead's executrix. Nothing in the record of the chancery suit evinced a levy on, or a sale of less than the entire stock of goods by Barrett, as such sheriff. On the contrary, his return, his bill, and the report of the commissioner united in stating that fact. At the hearing, on motion of plaintiffs, the county court received as evidence against the sureties, the record of the said chancery suit, to which they were no parties. *On the merits,* the county court gave judgments for the defendants. To these judgments the plaintiffs obtained writs of error, and the circuit court reversed the judgments *on the merits,* and gave judgments for the amounts Clagett's and Mead's representatives were entitled to, but affirmed the judgment in all other respects.

To the judgments of the circuit court, the said sureties obtained from one of the judges of this court, writs of error and *supersedeas.* The remaining facts and points raised are stated in the opinion.

*John M. Orr,* and *J. M. Forbes,* for the appellants.

The record in these cases, heard together, exhibits the following facts:

1. That Samuel M. Boss, as a merchant, was in the habit of renewing his stock frequently at irregular intervals, and in small quantities—the unsold portions of his stock accumulating in his store, until sold in course of trade.

2. That from time to time there were judgments and *fi. fa's* against said Boss, which went into the then sheriff's hands.

3. That a *fi. fa.* in favor of Thomas H. Clagett against Boss, issued returnable to the January rules 1861, which went into the hands of the then sheriff, and was returned "No property found, except that embraced in deed of trust," &c.

4. That this execution of Clagett's was renewed, returnable

to the May rules 1870, went into the hands of Summerfield Bolyn, then sheriff, and was returned " No property."

5. That other *fi. fa's* sued out by other creditors against Boss, went into the hands of, and were levied on Boss's goods by said Bolyn, sheriff, or John R. Smith, his deputy, viz: one of Saunders (use J. Mead's executrix), to May rules 1870; four of S. Foley's (use J. Mead's executrix), to May rules 1870.

6. That Bolyn received from Mead's executrix an indemnifying bond payable to him.

7. That while waiting for indemnifying bond, Bolyn neither released his levy on Boss's goods, nor restored the goods to Boss, but left them in Boss's storehouse, and permitted Boss to go on with his business as before the levy, selling his goods and renewing his stock.

8. That Bolyn's term of office expired with the 31st day of December, 1870, and that William F. Barrett's first term of office as sheriff began 1st January, 1871, and expired 31st December, 1873, for which term your petitioners were sureties on his official bond.

9. That after Barrett's term of office began, an execution of *French, Richards & Co.* v. *S. M. Boss*, issued returnable to April rules 1871, which went into the hands of Barrett as sheriff on 11th January, 1871, and was the only *fi. fa.* against S. M. Boss which ever came to Barrett's hands as sheriff.

10. That Barrett, after receiving said execution of French, Richards & Co., went on 12th January, 1871, to the store of Boss, and there sought out goods which were subject to the levy of that *fi. fa.* To this end he examined the freight bills, invoices, &c., of goods received by Boss since the return days of the executions in Bolyn's hands, and found goods named in said invoices so received since said return days, and still on hand to the amount of about $500, and on these, and these alone, he levied the said executions of French, Richards & Co.

11. That Barrett received from French, Richards & Co. an indemnifying bond, payable to him in penalty of $1,300, thus putting the value of goods levied on by Barrett at not exceeding $650.

12. That before the day of sale, and a month after the levy by Barrett, Joseph Mead's executrix having first indemnified Bolyn, sheriff, on 14th February, 1871, requested Barrett to sell also the goods on which her executions had been levied by Bolyn, as well as the goods Barrett was about to sell under his levy of French, Richards & Co.'s execution.

13. That, Barrett, who had at the instance of Smith, deputy for Bolyn, advertised to sell under the execution of Mead, as well as under that of French, Richards & Co., complied with this request of Mead's executrix, and on the 23d of February, 1871, did proceed to sell under the Mead execution as well as under the French, Richards & Co.'s execution the property levied on by Bolyn, in addition to the property levied on by Barrett under the *fi. fa.* of French, Richards & Co. The sale amounted in the aggregate to $2,304.14.

14. That the confusion first occurred at the sale, and in the sale-bill, by selling in lots and keeping but one sale bill, prior to which the goods Barrett had levied on, and which were subject to no other levy or lien, were entirely distinguishable, and had been separately levied on by Barrett.

15. Barrett discovered the mistake made in keeping but one sale bill when he attempted to distribute the proceeds of sale, or to take sale notes payable to the execution creditors for their respective amounts, and he sought the aid of the circuit court in equity in making such distribution to each creditor of the proceeds of that part of the goods of Boss on which the executions had been respectively levied, and he filed his bill for this purpose at July rules, 1871, in the circuit court of Loudoun.

16. In this bill he styled himself sheriff; averred that he had levied on the entire stock of goods of Boss; filed the original execution of French, Richards & Co., with a return in accordance

therewith, though the entry on the execution book in the clerk's office shows that the execution was not returned till August, 1871.

17. To this bill the sureties of Barrett were not parties. Clagett's executors were made parties on their petition. The official character of Barrett's acts was not put in issue. The only contest was between the execution creditors over the distribution.

18. In the progress of the cause the depositions of Boss, Barrett and Smith were taken February 22, 1872, by order of the court, by one of its master commissioners, and were conducted by the counsel for Clagett and Mead.

19. The court decided that it could not distinguish in the sale bill the goods on which French, Richards & Co.'s execution had been levied, and decreed a distribution as if the whole proceeds were on sales of property levied on by Bolyn under the executions in his hands.

20. By the final decree, the circuit court orders William F. Barrett to pay to Clagett's executors $1,202.02, and to Jos. Mead's executrix $819.87, the amounts claimed in said notices, and not W. F. Barrett, sheriff.

The appellants respectfully contend that the circuit court erred in affirming the judgment of the county court on the motions to quash, for want of jurisdiction, &c.

They further say, that the circuit court erred in reversing the judgment of the county court on the merits. It was error in the circuit court to decide that the sale by Barrett of the property of Boss, which has been levied on by Bolyn, sheriff, Barrett's predecessor, under executions in his hand, and Barrett's receipt of the proceeds of sale of those goods, was an official act of Barrett as sheriff, done *colore officii*, and that his failure to pay over the said proceeds to complainants in said notices was a default by him as sheriff, constitutes a breach of the condition of his bond as sheriff, for which his sureties therein were responsible to Clagett's executors, and to Mead's executrix.

They contend—

1. That a surety in an official bond, prescribed by the statute, is responsible for nothing which is not, in law, a breach of the condition of the bond.

That there can be no such breach of the condition, except through and by the malfeasance or the misfeasance of the principal, in what the law makes his official duty.   30 Grat. 1.

2. The mere assertion of the person, who is also the principal in the bond, that he is acting, or was acting, as officer and in his official character, will not make that act an official act, which would not be such without or in the absence of such assertion; and that such assertion may be contradicted by the facts proved. 30 Grat. 1; 4 Rand. —; 1 Rob. Pr. (old) —.

3. A *fi. fa.* can be executed only by that officer to whom it was directed.   Herman on Executions, §§ 145–148; 1 Rob. Pr. (old) 507–8: *Couch* v. *Miller,* 2 Leigh, 549–50; 2 Tuck. Com. 364; 2 John. C. R. 180.   That officer only can levy it—he only can sell under it—and he only can receive money under it before return day or after levy.   2 Tuck. Com. 359–371; 1 Rob. (old) Pr. 147; 30 Grat. 1; Herman on Executions, §§ 148 and 204.

4. An execution is an entire thing.   He who begins must end it; he cannot turn over to his successor goods he has taken under a *fi. fa.*   2 Tuck. Com. 362 and 370; 1 Rob. (old) Pr. 537; 9 Grat. 54; *Tyree* v. *Wilson,* 9 Grat. 64; *Tyree* v. *Donally.*   The officer to whom it is directed must make return on it.   Herm. Ex'n, § 232.

5. The authority of a sheriff to receive money under an execution arises from, and is wholly dependent on, his right to sell; his right to sell equally dependent on his levy or his right to levy.   If he have no right to levy or sell, he cannot officially receive money, and his receipt for money without this right is not an official act, nor done *colore officii,* nor does it entail aught but a personal liability, though he received it and receipted for it as sheriff.   30 Grat. 1; 4 Rand. 336; 1 Rob. 532; 9 Grat. 66.

6. The sheriff's authority is derived from and is limited by the language of the writ.   Herm. Ex'n, § 204.

The mandate of the writ empowers him to take only the goods of the defendant.   If he take, even by mistake, the goods of another, he is a trespasser.   2 Tuck. Com. 360.

7. His return must be responsive to the mandate of the writ. His return on the writ or execution, of performance of acts beyond his duty under such process, will be invalid as to such part, and will not be evidence.   It is not conclusive, although in a a proper case it may be used as an admission of the sheriff against himself individually.   See *Shannon* v. *McMullen,* 25 Grat. 218.

It may be used against the sheriff as an admission of the receipt of money by him, and possibly of any other act of his, but if that receipt or that act were beyond his duty, and if they were in themselves unofficial, said admission in the return could not convert such unofficial performance into an official act and impose a liability on his sureties any more than any other assertion of the officer; it would bear only on the personal responsibility of the sheriff.   30 Grat. 1.

8. What is known to the law as a "levy," is and must be "a seizure coupled with possession—it must be a taking possession, it is the execution of final process by the officer to whom it is directed.   1 Rob. Pr. (old) 528; 1 Munf'd, 269 and 279; 2 Tuck. Com. 366–7; Her. Ex'n, sections 158, 161.

Property so taken is in the custody of the law, and the "levy" (as one of its inseparable incidents) vests in the officer levying a special ownership therein.   Herm. Ex'n, sections 161, 172 and 173.

It is beyond the reach of other process while so held.   Her. Ex'n, section 168.

It is beyond seizure under any other execution.   Her. Ex'n, section 171, 173.

Though subsequent writs may be liens upon and claim sur-

plus at the hands of the officer, "when the officer has made the debt according to the command of the writ, it was originally his duty to have the money in court." 2 Tucker's Com. 364. Then the court can determine the rights of claimants of any surplus by virtue of lien by execution or otherwise. But to allow a levy upon property already levied on and in possession of the officer making the first levy, is unknown to the common law. See Ibid and sequel.

9. If the sheriff, who takes goods by levy, permit the debtor to eloign or waste them, the sheriff is liable to the creditor; if he permit any other person to do so, the sheriff is responsible to both execution creditor and debtor. 2 Tuck. Com. 367.

10. The bill is not evidence against the sureties. Starkie, 9th American edition, p. 439, marg.

11. "Color of office" is defined to be a "pretence of official right to do an act made by one who has no such right." 1 Bouv. Law Dic. 293. See also Tomlins Law Dic., title color of office, which makes an "evil" intent, and "corruption" essential elements in acts done "*colore officii.*" Barrett, it is not claimed, had any such motive.

One thing is made absolutely clear by the record, and that is that neither Clagett or Mead's executrix had any lien on goods acquired by Boss after May rules, 1870. Their liens, whatever they were, were on the property acquired before the return days of their executions, and on nothing else.

And it is also clear by the record that every particle of this property so subject to their lien, was in the special ownership and possession of Bolyn by reason of his levy (his seizure and possession) under executions received by him prior to May rules, 1870.

But for the adjudication of the circuit court, it might be doubted whether Mead's executrix had a lien, and still more strongly might it be said that Clagett had none, for Clagett's executions had both been returned "no property." If these returns be true (as we must take them to be so till amended or

disproved) then there could be no "lien by delivery," for if there was no property to be levied on, there could, in this case, be none to which the lien by delivery could attach, the claim being to a lien on the goods alone. If the return were false, Clagett's executors had and still have their remedy against sheriff Bolyn and his sureties for false returns.

That Bolyn, sheriff, (by John R. Smith, his deputy) had levied, is shown by the *fi. fa's* of the execution creditors being in his hands, and not returned "*nulla bona,*" and is also proved positively by the indemnifying bonds given him by the execution creditors, in which such levy is recited.

If Bolyn had thus levied the executions which were directed to him, it is put beyond controversy that Barrett could not "levy" on the property which Bolyn had levied on—that is, which Bolyn had seized and taken into the custody of the law.

The appellants, in further assignment of error, submit that the record in the said chancery suit of *Barrett* v. *French,* is not evidence against them. They were not parties to the cause, and the decree therein is the foundation of the plaintiffs' claims in the two motions they have severally made against said Barrett, sheriff, &c., and the appellants. The county court admitted this record as legal evidence against the appellants, to which they excepted.

The circuit court could not render its judgments reversing those of the county court without this record as evidence, for the final decree in *Barrett* v. *French* was the basis of the plaintiff's claims, and of the judgments of the circuit court against the appellants.

The appellants had no right to appeal from the final decree in *Barrett* v. *French,* and for this reason, that decree is not obligatory upon them, nor evidence against them. For this, also, they therefore submit the decisions of the circuit court against your petitioners is erroneous, and should be reversed.

*Payne & Alexander,* and *Harrison & Powell,* for appellees.

RICHARDSON, J., delivered the opinion of the court.

These cases turn upon precisely the same questions of law and fact, and may therefore, for all the purposes of this opinion, be treated as one.

The appellees, Clagett's executors, and the appellee, Mead's executrix, moved separately in the county court of Loudoun county for judgments against William F. Barrett, late sheriff of said county, and his sureties as such—that is to say, Clagett's executors moved for a judgment against said sheriff and his sureties for the sum of $1,202.20, with interest thereon from the 7th day of May, 1875; and Mead's executrix moved for a judgment against the same parties, in same court, for the sum of $819.87, with interest from same date. These sums said Barrett had, by a final decree in the case of Barrett, sheriff, against French, Richards & Co. and als., in the circuit court of Loudoun county, been ordered to pay to said parties respectively out of funds held by him as sheriff.

The facts and attendant circumstances are these: On the 11th day of January, 1871, there issued from the clerk's office of the circuit court of Loudoun county an execution in favor of French, Richards & Co. against one Samuel M. Boss for the sum of $461.45, and costs. This execution went into the hands of William F. Barrett, then sheriff of Loudoun county, and was by him levied upon *the entire stock of goods* in the store-house of said Boss, situated in the town of Leesburg, in said county.

The sheriff had scarcely advertised the goods for sale, under his said levy, when he received notices from sundry persons of conflicting claims upon the goods thus levied on, some from parties asserting that said Boss held certain of said goods as their agent, some others from parties claiming liens by virtue of prior executions which had issued but had not been levied. None of them, however, forbade the sale, all were content to

look to the proceeds of sale for the satisfaction of their claims; and said sheriff, after being first indemnified by French, Richards & Co., the plaintiffs in the execution which he had levied, proceeded to make sale, and did sell the entire stock of goods levied on, and realized therefrom about $2,300, and without paying over any part of the proceeds, either to French, Richards & Co., or any other claimant, at July rules, 1871, filed his bill in the county court of Loudoun county in his name, as sheriff of said county, against said French, Richards & Co., and others, claimants to said proceeds, including the appellee, Mead's executrix. In the progress of this chancery suit, the appellees, Clagett's executors, were made parties. In this bill, said Barrett, suing as sheriff, set forth the foregoing facts, showing the difficulties in which he, as sheriff, found himself involved—averred that he was utterly unable to determine who, among all these conflicting claimants, was entitled to share in the fund in his hands; and in invoking the aid and instruction of the court to so direct the distribution of same, as to protect him and the creditors, he, in language strongly expressive of the situation in which he found himself, says: "He is brought to a stand-still in the discharge of his duty." And in said bill he prayed that the various claimants be convened in that suit, and the fund distributed by order of court. Later this suit was removed, by consent of parties, to the circuit court of Loudoun county.

The duty of settling the rights and priorities of so many conflicting claimants proved both tedious and difficult. The contention seems to have dragged its way through a period of about four years. At last, after an account had been ordered and taken to ascertain the rights and priorities of the different claimants, and the same had been twice recommitted and restated without any very definite result, the circuit court of Loudoun, in the most just possible way, solved the whole problem, by holding that the burden of proof was on the junior execution creditor; that the oldest execution was a lien on all

the goods in store during its vitality; the next a lien upon
any surplus remaining in store of the original stock after the
first execution was satisfied, and also upon any goods added to
the stock after the return-day of the first execution; and so on
as to succeeding executions. This decree was rendered at the
April term, 1875, of said circuit court. By it, and first in
order, said Barrett was ordered to pay to the appellees, Clagett's
executors, the sum of $1,202.20; and to the appellee, Mead's
executrix, the sum of $819.87.

From this decree an appeal was taken to this court, where
the case lingered until 1879, when it was dismissed upon a rule
to print. By this time Barrett had applied to his own use the
fund in his hands, arising from the sale made under his levy
aforesaid, and had become insolvent. Inasmuch as Barrett's
official bond had been deemed ample, no other security had been
required in granting the appeal than was sufficient to meet the
costs, and when he had squandered the fund held by him and
become insolvent, no remedy was left the appellees, but to pro-
ceed against him and his sureties, the appellants.

This the appellees did by motion, after due notice, in the county
court of Loudoun, under section five of chapter one hundred and
sixty-three of the Code, which reads: "The court to which, or
in, or to whose clerk or office, any bond taken by an officer, or
given by any sheriff, sergeant or constable, is required to be
returned, filed or recorded, may, on motion of any person, give
judgment for so much money as he is entitled, by virtue of such
bond, to recover by action."

The appellants, the sureties of said Barrett as sheriff, having
been duly served with notice of the motion, appeared and
resisted the same upon the following grounds: (1) That the
court had no jurisdiction; (2) that the notice was insufficient by
reason of vagueness and uncertainty; and (3) for want of com-
petent evidence—they objecting to and insisting that the record
in said chancery suit of *Barrett, sheriff* v. *French, Richards &
Co. and others*, offered by the plaintiff, was not admissible in

evidence against them.  All of these motions were overruled,
and thereupon the defendants in said motion moved the court to
allow said Barrett, late sheriff, to amend his said return in a
manner materially altering the legal effect thereof, if not flatly
contradicting the same.  This motion, as well as the others was,
under the circumstances, properly overruled, as will hereinafter
be shown.  But the said county court, after hearing the evi-
dence, and although it was admitted by the defendants that said
Barrett, at the time of the service of said notice, was insolvent,
on the merits, gave judgments for the defendants; to which judg-
ments the plaintiffs excepted, and applied to and obtained from
the circuit court of Loudoun county a writ of error and *super-
sedeas.*

On the 24th day of April, 1880, the circuit court of Loudoun
county heard the causes, and reversed and annulled the said
judgments of the county court on the merits, and proceeding to
give such judgment as the county court ought to have given,
rendered a judgment in favor of the then appellants, Clagett's
executors, and in favor of the then appellant, Mead's executrix,
each for the penalty of said Barrett's official bond, to be dis-
charged by said sums of $1,202.20, and $819.87, respectively,
with interests and costs.  To these judgments of the circuit
court of Loudoun county the appellants obtained a writ of error
and *supersedeas*, and the cases are now to be finally determined
by this court.

The same objections made in the county court, and repeated
in the circuit court, are relied upon here.  It is important, there-
fore, to notice them in the order they were made.

First, as to the question of jurisdiction.  If the fifth section
of chapter one hundred and sixty-three of the Code was in force
and unrepealed when proceedings in these cases were com-
menced in the county court, it is plain that it gives the motion
and jurisdiction to hear and determine it to that court, in the
clerk's office of which a sheriff's bond is required to be, or is, in
the particular instance, actually recorded as authorized by law.

By the third section of chapter forty-nine of the Code, a sheriff is permitted to have his bond approved, and to qualify before the judge of either the county or circuit court of his county, either in term time or in vacation; but it is provided that if the qualification is in vacation, the certificate thereof, and the oath, shall be returned to the clerk of the county court. In this case the record discloses the fact that the county court, in trying these motions, expressly found the fact that the sheriff in this case did qualify before the county court, and that his bond was recorded in the clerk's office thereof. This would seem to be conclusive. But it is insisted by counsel for the appellants that said section five of chapter one hundred and sixty-three was repealed by section nine of chapter three hundred and ninety-five of the acts of 1872–'3, which reads: "Sections sixteen of chapter one hundred and fifty-seven, and five of chapter one hundred and fifty-eight of the Code of 1860, and three and four of chapter thirty-eight of the acts of 1869–'70, and all acts and parts of acts in conflict or inconsistent with this act are and shall be repealed on and from the day this act goes into effect," &c. It is not pretended that the act just quoted, in terms, refers even to the fifth section of chapter one hundred and sixty-three, but it is contended that the latter is in conflict and inconsistent with the repealing act of 1872–'3, and is repealed by the latter clause thereof. It is apparent, however, that there is no conflict, no inconsistency between the acts in question. Nor was said section five, of chapter 163, ever in any sense dependent upon the several sections, or either of them, repealed by the act of 1872–3. On the contrary, section five of chapter 163 was and is entirely independent, and intended by the legislature to afford a cheap and expeditious remedy by motion in many cases which might be enumerated. The prime object of the act of 1872–3 was simply to withdraw from the county courts certain chancery jurisdiction, and not in any way to interfere with the peculiarly appropriate jurisdiction conferred thereon by the said fifth section of chapter 163. The subject again un-

derwent revision in 1874, when the legislature, so far from cur-
tailing, enlarged and amplified the jurisdiction of the county
courts by amending and reënacting sections three, four, six and
twelve of chapter 154 of the Code of 1873. See chapter 144, acts
1874. By the fourth section of chapter 154, it is declared,
among other things, that the county court "shall have jurisdic-
tion to hear and determine all *motions* and other matters made
specially cognizable therein by any statute." And the legislature,
in the act of 1874, before referred to, was careful to retain the
language just quoted. And not only so, but amended the
twelfth section aforesaid so as to read: "All matters or things
authorized by law to be done by or in the county court, may be
done at any term thereof." This is of special significance when
we see, as was the fact, that motions under the fifth section of
chapter 163 were, prior thereto, cognizable only at quarterly
terms of the county courts. It is manifest, therefore, that the
said fifth section of chapter 163 was not repealed by section
nine of chapter 395 of the acts of 1872–3, and that these motions
were properly and specially cognizable in the county court.

As to the motion to quash the notices in these cases, it is only
necessary to say the notices clearly informed the defendants of
the character and object of the motions to be made, and were in
all respects sufficient.

We will next notice the objection by the defendants in these
motions, to the introduction, on behalf of the plaintiffs in said
motions, of the record in said chancery suit of Barrett, sheriff,
against French, Richards & Co., and others. This was a strik-
ingly strange objection to come from the defendants, especially
when we reflect that Barrett, as sheriff, instituted that suit and
made that record for the avowed purpose of protecting himself
as sheriff, as well as the claimants to the fund in his hands,
by a decree judicially determining the rights of all the parties,
and directing a proper distribution of the fund. It was a mat-
ter peculiarly within the province of a court of equity. And
when involved as sheriff in the troubles which endangered

himself and sureties; when, to use his own very expressive language, he had been brought to a "stand-still," and was relieved by a decree, making his duty plain and easy, he, in the meantime, having squandered the fund, comes forward, when these creditors of his only ask for the portions allotted them by a decree made at his instance and for his protection, and proposes to amend and explain away his official return, which is verity itself, and upon the faith and effect of which he had induced a court of equity to come to his relief by the decree in question. The decree of the circuit court was the judgment of a court of competent jurisdiction, founded, to a large extent, upon the return of this sheriff—that return itself was a matter of record, and as such unimpeachable in any mere collateral proceeding. It had enhanced dignity, in the fact that it had properly become an important part of the record in said chancery suit. It was, under the circumstances, conclusive as well against the sureties as against Barrett himself; for the return was made, and the responsibility increased in the usual course of the duties and transactions of a sheriff. There is no intimation that the return had been procured by fraud or collusion. All the objection rests on the fact, that in the course of taking the account said Barrett had, before the commissioner taking the same, given his deposition, tending to show that he had levied the execution of French, Richards & Co. on only a part of the stock of goods found in the store-house of said S. M. Boss, and that the residue and major part of said goods were sold by him as agent of the former sheriff, into whose hands the prior executions had gone. It is plain that he had no legal authority to act as agent in the discharge of a plain official duty for any former sheriff. It is plain that he not only had no authority to explain away his return, in this incidental way while giving his deposition in said chancery suit, but that he had no right, and could not amend his return except by leave of the court upon notice to the parties in interest. It is not strange, therefore, that the court refused to permit him to amend in the

way proposed. He did not, in the county court, ask to amend. It is apparent, then, that the idea of amending was an after-thought and wholly inadmissible. To make true returns on all process, says Judge Cabell, in *Norris* v. *Cumming,* 2d Ran. 351, is a duty which forms an important part of the condition of a sheriff's bond. The return, therefore, in this case, if false, was a violation of the condition of the bond, and it was injurious to the creditor, as it barred him from taking out and prosecuting another execution. If then a sheriff makes a return, and the consequences of that return are about to be brought to bear, as in this case, upon him and his sureties, it would be strange, indeed, that his sureties, those who have bound themselves that all his returns shall be true, should be permitted to escape, by alleging that the return is false, by alleging that which of itself is a forfeiture of their bond, and an injury to the creditor. See also 4th Minor's Institutes, 839 ; *Henry* v. *Stone,* 2d Ran. 455, and Herman on Executions, § 242.

In another view, and not in derogation of the salutary principle that every man is entitled to his day in court, the record in said chancery suit was properly evidence *prima facie* against said sureties, although they were not parties thereto. *Munford* v. *Overseers of the Poor,* 2 Ran. 313 ; *Jacobs* v. *Hill,* 2 Leigh, 393 ; *Cox* v. *Thomas,* 9 Grat. 323 ; *Crawford* v. *Tuck,* 24 Grat. 176, and *Supervisors* v. *Dunn,* 27 Grat. 622.

There is but one other question raised which deserves notice. It is the claim of appellants that the levy made by Barrett, their principal, was, except as to some five hundred dollars, in value of the stock of goods levied on, made by him by virtue of the prior executions turned over to him by one Smith, a deputy of Summerfield Bolyn, the sheriff of Loudoun county, next preceding Barrett. This, too, rests upon the voluntary statement made by Barrett in his said deposition, given before the commissioner who took the account, in the suit of *Barrett, sheriff* v. *French, Richards & Co. and others.* It is to the effect that some $500 in value of the goods levied on had been added to the stock

of Boss, after the return day of the executions which had gone into the hands of the preceding sheriff. But Barrett does not even intimate that he was able to identify these goods and levy upon them only. In fact, he could not say this, for it would have appeared manifestly untrue. What goods had been removed by Boss, the debtor, since the return day of the prior executions, was the very thing which the circuit court of Loudoun, with the aid of its commissioners and counsel, had in vain attempted for four years to find out. Barrett evidently knew nothing about it. He only knew from certain bills and invoices that a portion of Boss's stock had been received since the return day of the prior executions; but he did not pretend that those goods were in the stock when he made his levy, or were distinguished or distinguishable from the stock at large.

In his bill in his suit of *Barrett, sheriff* v. *French, Richards & Co., and others,* Barrett says that he levied on *the entire stock,* and sold accordingly. In his return he says that he levied on the whole, and the commissioner who took the account reports the same fact. And throughout the entire record there is no evidence that Barrett sold the goods in question under any levy save his own.

Counsel for the appellants insist, however, that a large portion of the goods levied on were not legally liable; in other words, that it was *legally impossible* for Barrett to levy upon them, because they say they were in the custody of the law under senior executions in the hands of the preceding sheriff. The claim is not borne out by the record, or any thing therein. If Barrett made an excessive levy, or upon goods in the legal custody of the preceding sheriff, it is, or was for the parties injured, to complain of such trespass. Surely the appellees could not be kept out of their just rights by the pretence that Barrett, as sheriff, had exercised the important functions of his office as the mere agent, in whole or part, of the preceding sheriff. It is for the purposes in hand enough that Barrett levied upon and sold the *entire stock* of goods under color of his office; that the

entire proceeds of sale went into his hands; that the circuit court of Loudoun county has judicially ascertained, by a decree not appealed from, how that fund shall be distributed, and that the appellees respectively are entitled to the sums for which they have obtained judgments at law. For these reasons the said judgments of the circuit court of Loudoun county are both plainly right, and must be affirmed.

AFFIRMED.