## CIRCUIT COURT OF THE CITY OF RICHMOND

Lone Star Cement, Inc.

    v.

Central Builders, Inc.

July 9, 1984

Case No. LH 959

By JUDGE MARVIN F. COLE

On May 17, 1982, the City of Richmond entered into a contract with Central Builders, Inc., as general contractor, who agreed to provide labor and materials for the construction of a water transmission main. In accordance with the contract and also Section 11-23 of the Code, Central furnished a performance bond and a payment bond with Lumbermens Mutual Casualty Company as surety.

Central contracted a portion of the work to Van Doren Brothers, Inc. At various times during 1982 and 1983 the plaintiff, Lone Star Cement, Inc., sold to Van Doren certain goods and materials described on invoices attached to the motion for judgment. The unpaid invoices aggregate the sum of $23,084.97. Reference to the invoices reflect approximately 70 purchases, commencing on December 2, 1982, and ending on June 2, 1983. Counsel for the plaintiff admits that all purchases were made upon open account, and that there was no basic agreement between plaintiff and Van Doren.

Van Doren was not required to post a bond in accordance with Section 11-23 of the Code and Van

Doren has now filed a petition in bankruptcy. The plaintiff has now filed this suit against the general contractor (Central) and its surety under the bond.

To the motion for judgment against them the defendants have filed a demurrer, claiming that the plaintiff Lone Star is not among the persons given a right to sue the general contractor and its surety under Section 11-23 of the Code and that since plaintiff has not entered into a contractual obligation with a subcontractor, the only recourse that the plaintiff has is against Van Doren.

The issue in this case is whether the plaintiff Lone Star comes within the language of Section 11-23 of the Code in effect at the time which states as follows:

> In the event a contractor fails to require from a subcontractor the bond provided for herein, any person who has and fulfulls contracts directly with such subcontractor for performing labor and furnishing materials in the prosecution of the work provided for in the subcontract shall have a direct right of action against the obligors and sureties on payment bond required of the contractor under subparagraph (b) above.

It should be noted that the statute states that "any person who has and fulfills contracts directly with such subcontractors for performing labor and furnishing materials in the prosecution of the work provided for in the subcontract" shall have a direct right of action against the general contractor and his bondsman.

The question then is whether Lone Star had and fulfilled a contract or contracts directly with Van Doren, admittedly a subcontractor, for performing labor and furnishing materials in prosecution of the work.

The Miller Act uses language that is not substantially different from the Virginia statute. The Miller Act says that "any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon such payment bond upon giving written notice. . ."

There is very little difference, if any, between the terms "having direct contractual relationship with a sub-contractor" and "any person who has and fulfills contracts directly with such subcontractor". It is surprising that in the cases involving the Virginia statute that the words "who has and fulfills contracts directly with such subcontractor" has been completely overlooked or totally ignored. I cannot find where the courts have made any attempt to determine the meaning or the extent of this language.

In Vulcan Materials Co. v. Betts, 315 F. Supp. 1049 (W.D. Va. 1970), Materials commenced an action against the general contractor, his bondsman, and a supplier of crushed rock under a public construction contract.

The Commonwealth of Virginia entered into a contract with Oman Construction Company to construct a road. Oman agreed to furnish all labor and all materials to do the job. By a purchase order dated July 18, 1966, Oman contracted to purchase from defendant, Betts, 47,030 tons of stone and material to be used by Oman on the project. The purchase order called for "C.B. R. 30 Select Material, Type 1, to be delivered in proper condition to meet C.B.R. 30 Compaction" and specifications of the Department of Highways.

By letter dated August 18, 1966, Betts ordered from plaintiff Vulcan substantially all of the C.B.R. 30 Select Material, Type 1 stone it had contracted to prepare and supply to Oman. Vulcan billed Betts and Betts billed Oman. Oman paid Betts for all materials delivered to the job site until April 17, 1967, at which time Oman was advised that Betts's payments for

the materials purchased from Vulcan were in arrears.

Vulcan secured a default judgment against Betts and then sued Oman, the general contractor, and its surety on the bond, the theory being that it had a direct statutory right of action against Oman and Reliance for failure to comply with Section 11-20 requiring a bond of a subcontractor. Oman did not require and Betts did not post bond according to Code Section 11-20.

The court in the Vulcan case decided only one issue, and that was whether Betts was a subcontractor. The court very thoroughly reviewed the law and defined subcontractor and concluded that Betts was a subcontractor. Once having considered this question the court then concluded that Vulcan had a claim under the general contractor's bond, but did not consider the question whether Vulcan had and fulfilled a contract with the subcontractor Betts. The court placed all of its attention upon the issue of whether Betts was a subcontractor under the general contractor, Oman Construction Company.

In Solite Masonry v. Piland Construction, 217 Va. 727 (1977), Piland entered into a contract with the City of Hampton for the construction of the city garage. Piland was general contractor and posted a bond in accordance with Code Section 11-23. Piland then entered into a contract for Story to perform the masonry portion of the contract with the city. Between September 1974 and January 1975 Solite received from Story orders for masonry blocks for use in the construction of the garage. Solite made 18 deliveries of block to the job site. The invoice tickets reflect the number of block delivered, identify the customer or purchaser as Story and the job as Hampton City Garage. At the time of the trial the account was past due since February 1, 1975. However, some of the blocks delivered to the job site by Solite were removed to other jobs by Story and did not go into construction of the city garage. The general contractor counted the actual number of blocks used in the construction

of the garage. The issue was whether to grant judgment upon the number of blocks actually delivered to the job site or to grant judgment upon the number of blocks actually used in the construction of the garage. The Supreme Court stated that disposition of this question involved construction of Code Section 11-23. Therefore, the issue in this case is not dispositive of our case, but there may be certain dicta in the case that may be helpful to us.

The following statements made or quoted with approval in Solite by the Supreme Court of Virginia in construing Section 11-23 may throw some light on the issue in this case:

(1) The section is remedial in character, its language is broad and inclusive, and it was enacted to afford protection to materialmen and subcontractors who cannot avail themselves of the provisions of Code Sections 43-7 and 43-9, since mechanic's liens cannot be perfected against public buildings.

(2) It is made manifest by this language that the intent of the statute is to protect those who furnish supplies, material and labor in and about the construction of the public buildings and improvements mentioned in the act, whether they be furnished to the principal contractor or to a subcontractor; of this a general contractor and his surety must take cognizance, they may readily protect themselves against the shortcomings of subcontractors by requiring bonds of the latter.

(3) The phrase, "furnishing materials in the prosecution of the work", parallels the language used in the Miller Act.

(4) In Vulcan Materials Co. v. Betts, supra, the Virginia statutes and the Miller Act are quite similar and were enacted for the same purpose, to protect those whose labor and materials go into public projects.

(5) When Code Section 11-23 was amended and reenacted in 1962, the General Assembly incorporated

language similar to that of the Miller Act.

In Solite the Supreme Court stated the following which is directly related to our case:

> The statute was amended (1962) to apply not only to all persons supplying the contractor with labor and materials in the prosecution of the work, but significantly, the amendment provided a direct right of action on behalf of any person who has and fulfills contracts directly with a subcontractor for performing labor and for furnishing materials in the prosecution of the work provided for in the subcontract.

Therefore, a person must accomplish three things in order to have a direct right of action:

1. Have and fulfill a contract directly with a subcontractor.

2. The contract must be for performing labor and for furnishing materials.

3. Performing labor and furnishing the materials must be in the prosecution of the work provided for in the subcontract.

A simple example will bring this into focus and also demonstrate the problem of making a determination whether a person has a direct right of action.

A first subcontractor calls a supply house and orders 100 cinderblocks. The supply house agrees to do this. Here we have a contract with a subcontractor. It is for furnishing material, but it is not in the prosecution of any work provided for in the subcontract.

A second subcontractor calls a supply house and orders 100 cinderblocks, to be delivered to the Hampton City Garage job, such cinderblock to be used by the

subcontractor in fulfilling its contract with the general contractor to do all of the cinderblock work on the job. The supply house agrees to furnish the block. Here all three requirements are present.

No Virginia case has discussed this situation. Counsel have stated that Vulcan and Solite have, but any statements in those cases is dicta. I have gone to the Supreme Court and read the transcript and the briefs in the Solite case, and that case decided only one narrow issue, as previously discussed herein.

The case of United States ex relatione for the use of K & M Corp. v. A.M. Gregos, Inc. v. Eastern Mechanical, 607 F.2d 44 (1979), stands for the proposition that under the Miller Act, in determining whether a person has a direct contractual relationship with the general contractor to sue on the payment bond, the court may not look to the function carried out by contracting parties, but must look to the position the parties occupy in the contractual structure of the job. A structurally defined limitation has been placed upon the right to sue.

In Vulcan the word subcontractor was defined as follows, citing a Fourth Circuit Case:

> a subcontractor is one who performs for and takes from the prime contractor a specific part of the labor or of material requirements of the original contract, thus excluding ordinary laborers and materialmen.

Each case therefore must be determined upon the facts of each individual case. Here we are dealing with a demurrer, a device used to test the pleadings in a case. Assuming all of the pleadings to be true, is a cause of action stated? Obviously, in this case no cause of action is stated. Only an open account is alleged. The plaintiff has not alleged that it has and has fulfilled a contract directly with a subcontractor for furnishing materials in the prosecution of the work provided for in the subcontract. Lacking this, I must sustain the demurrer. I request counsel for the

defendant to prepare an appropriate order sustaining the demurrer, granting however 14 days to the plaintiff to amend its motion for judgment if there are facts to support such an amendment.