# Richmond

## SOLITE MASONRY UNITS CORPORATION V. PILAND CONSTRUCTION CO., INC., ET AL.

March 4, 1977.

Record No. 760272.

Present, All the Justices.

*M. Richard Epps (E. Kenneth Day; Day, Summs, Epps & Simpson,* on brief), for plaintiff in error.

*(W. Dean Short; Short, Short & Telstad,* on brief), for defendants in error.

Case submitted on brief for defendants in error.

HARRISON, J., delivered the opinion of the court.

Solite Masonry Units Corporation instituted an action at law against Piland Construction Co., Inc., United States Fidelity and Guaranty Company, surety on Piland's statutory performance and payment bond, and Roger Story, t/a Superior Construction Company, to recover the sum of $5,311.65, with interest from February 1, 1975, evidenced by an account for certain masonry block which Solite furnished to Story, a subcontractor of Piland. The court rendered judgment in favor of Solite against Piland and U.S.F. & G. Co. in the amount of $2,447.99. Proper service of process was never obtained on Story. The sole question involved

on appeal is whether the trial court erred in holding that Solite is entitled to recover for only that material it supplied the subcontractor which was actually used in the building constructed by Piland.

On July 12, 1974, Piland entered into a contract with the City of Hampton for the construction of the Hampton City Garage. Piland was employed as the general contractor on the job and, pursuant to Code § 11-23, executed and delivered to the city its performance and payment bond with the U.S.F. & G. Co. as surety thereon.

Thereafter Piland entered into a contract with Roger Story, t/a Superior Construction Company, whereby Story agreed to perform the masonry portion of Piland's contract with the city. Between September 19, 1974 and January 8, 1975, Solite received from Story orders for masonry blocks for use in the construction of the garage. Pursuant to Story's order Solite made 18 deliveries of block to the job site. The invoice tickets, which were duly receipted, reflect the number of blocks delivered, identify the customer or purchaser as Superior Construction Company and the job site as "Hampton City Garage". A copy of the invoices accompanied the blocks to the job, and a copy was mailed to Story. At the time of trial the unpaid balance due Solite by Story for the blocks so delivered was $5,311.65, and the account had been past due since February 1, 1975.

It was testified that sometime subsequent to January 8, 1975, some of the blocks that had been delivered to the garage site by Solite were removed by Roger Story. This fact was brought to the attention of Piland, for whom Story was performing two or three other jobs at the time. When told that the materials were being moved "back and forth", R. Stanley Piland, president of Piland, said: "They are not my materials. I have nothing to do with it."

Henry Hancock, superintendent for Piland, testified that he brought the matter of the block removals to the attention of Charlie Graves, Solite's representative, "about the time the manager or the owner [Story] of Superior took off out of town, left town". Graves testified that he was present on one occasion when Story removed "about ten or fifteen blocks" from the job site and that this apparently occurred after a substantial portion of the blocks had been delivered. Graves said that he had no

conversation with any other representative of Solite with reference to the removal of the blocks for the reason that "the block did not belong to us at that time. It was Mr. Story's block".

Subsequent to default being made by Story in the payment of his account with Solite, Piland caused a count to be made of the actual number of blocks used in the construction of the Hampton garage. Although the trial judge concluded that the blocks alleged to have been delivered to the job site were so delivered, he awarded Solite judgment based upon the amount due Solite for the block actually used in the construction of the garage rather than the amount represented by the blocks delivered by Solite to Story at the garage site.

The disposition of this case involves the construction of Code § 11-23. Appellees contend that a supplier of materials to a subcontractor is entitled to recover against the general contractor and the surety on his bond only to the extent that the materials are actually used on the job. Appellant says that a supplier need only in good faith furnish materials in the prosecution of the work in order to be afforded the protection of Code § 11-23 and that their actual incorporation into the structure, or use in the process of constructing the building, is not necessary.

Code § 11-23 concerns "Bonds on public contracts to which county, city, town, school board, or agency thereof, is party; conditions of such bonds." The section provides, in pertinent part, that when a city enters into a construction contract in excess of $2,500 the general contractor shall execute certain bonds, with surety, including:

"(b) A payment bond conditioned upon the payment of all persons who have, and fulfill, contracts which are directly with the contractor for performing labor or furnishing materials in the prosecution of the work provided for in said contract."

Code § 11-23 further provides that the general contractor shall require a corresponding bond from his subcontractor, conditioned upon payment of the latter's laborers and materialmen, and that:

"In the event a contractor fails to require from a subcontractor the bond provided for herein, any person who

has and fulfills contracts directly with such subcontractor for performing labor and furnishing materials in the prosecution of the work provided for in the subcontract shall have a direct right of action against the obligors and sureties on the payment bond required of the contractor under subparagraph (b) above."

The section is remedial in character, its language is broad and inclusive, and it was enacted to afford protection to materialmen and subcontractors who cannot avail themselves of the provisions of Code §§ 43-7 and 43-9, since mechanic's liens cannot be perfected against public buildings. That the section must be liberally construed in favor of materialmen and subcontractors was made clear in *Thomas Somerville Co. v. Broyhill*, 200 Va. 358, 363, 105 S.E.2d 824, 828 (1958), where we said:

"It is made manifest by this language that the intent of the statute is to protect those who furnish supplies, material and labor in and about the construction of the public buildings and improvements mentioned in the act, whether they be furnished to the principal contractor or to a subcontractor; of this a general contractor and his surety must take cognizance. They may readily protect themselves against the shortcomings of subcontractors by requiring bonds of the latter. *C. S. Luck & Sons v. Boatwright*, 157 Va. 490, 162 S.E. 53."

The phrase, "furnishing materials in the prosecution of the work", parallels the language used in the Miller Act, 40 USC § 270b, to wit:

"(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract. . . ."

In *Vulcan Materials Co. v. Betts*, 315 F.Supp. 1049, 1052 (W.D. Va. 1970), the court noted that the Virginia statutes and the Miller Act are quite similar and were enacted for the same purpose, to protect those whose labor and materials go into public projects.

The Miller Act, which repealed the 1894 Heard Act, was enacted in 1935. It omitted the language of a 1905 amendment to the Heard Act, whereby the right of action was limited to those whose material was used in the work. The 1935 Miller Act

relaxed the requirement that the material be used in the work so as to extend protection to those who "furnish labor or material in the prosecution of the work". When Code § 11-23 was amended and reenacted in 1962, the General Assembly incorporated language similar to that of the Miller Act rather than its predecessor, the Heard Act. Acts 1962 c. 179.

Solite argues that the interpretation of Code § 11-23 contended for by appellees would place a supplier in an untenable position in that it would require a supplier to account for each and every block used in the process of the construction, or incorporated into the building. Solite points to the fact that its title to and all control over the blocks passed to Roger Story upon their delivery to the garage site. Code § 8.2-401(2).

We agree that it would be unjust to hold that Solite, which had in good faith supplied a subcontractor materials indispensable to Piland in the prosecution of the work, could be defeated in its action on the payment bond because some of the materials were in fact diverted by Story to other construction jobs or to private use. It did not lie within the power of Solite to protect itself against the happening of such an event, other than to have required payment in cash for the blocks upon delivery — a requirement contrary to custom and usage. Further, the general contractor had numerous options to protect itself against loss. It could have required its subcontractor to give security by bond or otherwise for the payment of those who contracted directly with its subcontractor. The general contractor selects its own subcontractors and could have exercised a greater degree of selectivity and chosen a responsible one. Further, the general contractor, not Solite, was in charge of the construction site with the right to police all activities thereon, including deliveries to the site and removal of articles therefrom. Once Solite effected delivery it was without the authority to guard the blocks, insure their incorporation into the building or otherwise police the activities of the general contractor or its subcontractors.

Numerous cases have construed the language of the Miller Act and have held that a materialman need not prove that his materials were actually used in the prosecution of the work of the prime contractor, but only that in good faith he reasonably believed that the materials were so intended.

Typical of these cases is *Glassell-Taylor Co.* v. *Magnolia Petroleum Co.*, 153 F.2d 527, 529 (5th Cir. 1946), where the Court said:

"Whether or not the materials were wholly consumed 'in the prosecution of' the work provided for in the contract and bond is not controlling. What is important is the fact that these materials were 'supplied' to the subcontractor in the prosecution of the work provided for."

In *Riley-Stabler Const. Co.* v. *Westinghouse Electric Corp.*, 396 F.2d 274, 276 (5th Cir. 1968), referring to a provision of the Alabama Code not unlike Code § 11-23, the court said:

"But irrespective of the historical context, and approaching the issue as an original question, we are constrained to hold that the statutory words 'for * * the prosecution of the work' encompass the furnishing of diverted materials as well as non-diverted ones. The insertion of the preposition, 'for', in the 1935 Act constitutes a significant change over the 1927 Act. The legislature is presumed to have made the change for a purpose. The phrase, as revised in the 1935 Act, shifts the inquiry from how or whether the materials were used to the purpose for which they were supplied. The natural and ordinary connotation of the phrase as it now reads is that a bond covers payment of materials which are used on a bonded project or which are furnished in the contemplation of being used on that project whether they are in fact so used or not."

*See also United States* v. *C.J. Elec. Contractors, Inc.*, 535 F.2d 1326 (1st Cir. 1976); *United States, Use & Benefit Carlson* v. *Continental Cas. Co.*, 414 F.2d 431 (5th Cir. 1969); *Ajax Const. Co.* v. *United States*, 351 F.2d 305 (9th Cir. 1965); *United States* v. *Endebrock-White Company*, 275 F.2d 57 (4th Cir. 1960).

Counsel for appellees, as did the trial court, rely upon language found in *Thomas Somerville Co.* v. *Broyhill, supra*, to sustain their position that Solite should recover for only the cost of the block actually incorporated into the garage. Their reliance is misplaced. The issue which confronts us in the instant case was not the issue framed by the pleadings or presented for decision in *Somerville*. There, Somerville, the supplier of materials to Broyhill, the subcontractor, alleged in its notice of motion for judgment that the material supplied by it *had been*

*actually used in the construction job.* The plaintiff assumed a burden which it was not required to assume. The only issue before the Court was whether delivery of material to the building site was evidence that it was used in the construction of the building. The Court was not asked to decide whether incorporation of materials into the building was a prerequisite to recovery under Code § 11-23, and that issue was not resolved. Further, *Somerville* was decided in 1958 prior to the 1962 amendment of Code § 11-23 which we have heretofore quoted. The statute was amended to appy not only to all persons supplying the contractor with labor and materials in the prosecution of the work, but significantly, the amendment provided a direct right of action on behalf of any person *who has and fulfills contracts directly with a subcontractor* for performing labor and for furnishing materials in the prosecution of the work provided for in the subcontract.

The evidence in this case establishes that Solite had and fulfilled its contract with Story, a subcontractor of Piland, the general contractor; that Piland had not required of Story the bond provided for in Code § 11-23; and that Solite in good faith sold and delivered material to Story for use in the Hampton City Garage then under construction by Piland, and is entitled to recover therefor. Accordingly, the judgment of the lower court is reversed and vacated. Final judgment will be entered here for appellant, Solite, against appellees, Piland and U.S.F. & G. Co., in the amount of $5,311.65, with interest from November 6, 1975.

*Reversed and final judgment.*