537 So.2d 1318 (1989)
KEY CONSTRUCTORS, INC. and Reliance Insurance Company
v.
H & M GAS COMPANY.
No. 58193.
Supreme Court of Mississippi.
January 4, 1989.
*1319 Roger C. Landrum, Jackson, for appellant.
Dale H. McKibben, McKibben & Spencer, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
A supplier of materials to a public works project has sued the subcontractor which it had supplied, the prime contractor and its bonding company. Based upon affidavit and deposition testimony, the lower court granted summary judgment in favor of the plaintiff/materialman.
As they did at the last minute in the court below, the prime contractor and bonding company struggle mightily on this appeal to muddy the water, raising a plethora of irrelevant and meritless issues. In the end, we share the view of the Circuit Court: that there are no genuine issues of material fact and that the plaintiff/materialman is entitled to judgment as a matter of law.
We affirm, except on the issue of the attorneys fees where the materialman's proof fails as a matter of law.

II.

A.
First, the players:
H & M Gas Company, formerly H & M Butane Company ("H & M") is a Mississippi corporation and is a supplier of petroleum products located in Edwards, Mississippi. The company is owned by W.H. Montgomery, Jr., and his family. Although H & M is primarily in the business of the sale of propane gas, it also services the needs of road-building contractors regarding diesel fuel and various lubricants used by large earth-moving machinery.
Cox Construction Company ("Cox") is a Mississippi corporation also having its principal place of business in Edwards, Mississippi. Cox is a contractor whose primary business is the subcontracting of earth-moving and drainage work for highway construction projects.
Key Constructors, Inc. ("Key") is a Mississippi corporation having its principal place of business in Jackson, Mississippi. Key is a general contractor in the field of highway construction, particularly highway bridges. The president of Key is Charles R. Webster. Because of the nature of its business, Key necessarily engages in a great deal of public works contracts.
By law, the general contractor of any public works project must furnish performance and payment bonds in an amount equal to the value of the contract. Whenever Key is required to furnish such a bond, it frequently uses the services of Reliance Insurance Company ("Reliance"), a Pennsylvania corporation having its principal place of business in Philadelphia and being qualified to do business in the State of Mississippi.

B.
On September 2, 1983, Key entered into a contract with the Mississippi State Highway Commission for the making of improvements on U.S. Highway 61 in Warren County. Key subcontracted the earth-moving portion of the contract to Cox. Key often employed Cox for this purpose and, at the time the Warren County project was in progress, Cox was performing various earth-moving services for Key in other locations. Cox was also performing work for contractors other than Key.
As work progressed on the Warren County project, H & M supplied the fuel and lubricant needs of the machinery owned by Cox. By the time the earth-moving phase of the project was completed in September of 1984, H & M had supplied fuel and lubricants valued in excess of $20,000.00 *1320 to the Warren County work-site. The financial condition of Cox, however, had become such that it was unable to pay for the fuel which H & M had delivered.
H & M attempted to negotiate payment from representatives of Cox and Key. When these negotiations reached an impasse, H & M on October 25, 1984 hand-delivered a letter demanding payment to the prime contractor, Key. H & M's repeated demands for payment remained unavailing.

C.
On February 14, 1986, H & M commenced this civil action by filing its complaint in the Circuit Court of Hinds County, naming as defendants, Cox, Key and Reliance. Attached to the complaint were the invoices representing deliveries to Cox at the Warren County jobsite. Although these invoices are written on forms provided by Waring Oil Company of Vicksburg, Mississippi, H & M's relationship with Waring was such that H & M was ultimately entitled to payment for these deliveries. Also included as an exhibit to the complaint was an assignment from Waring to H & M of the rights of payment represented by these invoices. The assignment is dated January 2, 1986.
In its answer, Key filed a cross-claim against Cox for any indebtedness of Cox it may be required to pay. See Rule 13(g), Miss.R.Civ.P. Cox did not answer either the Complaint or the Cross-Complaint.
On July 18, 1986, H & M filed a motion for summary judgment. Attached to the motion was the affidavit of W.H. Montgomery, Jr., detailing the deliveries made to Cox, H & M's contractual relationship with Waring and verifying the amounts represented in the invoices. A hearing on this motion was scheduled for September 17, 1986. The day before this hearing, Key and Reliance filed the affidavit of Charles R. Webster, President of Key, in opposition to the motion. In substance, the brief affidavit disputes only H & M's computations, stating:
That in its answer Key denied Paragraph 6 of the complaint, partially because it did not have sufficient knowledge to form a belief as to whether plaintiff furnished the itemized fuels. Subsequent investigation shows that as to Invoice No. 19743 for $2229.52 that at least $186.45 thereof was used on a completely separate contract in the state of Louisiana. Further, as to an Invoice No. 19619, there was a credit of $40.00 for which Key is not given credit on plaintiff's statement or in its suit. That these two items make the rest of the account suspect to the end that Key is entitled to strict proof as to delivery to the job-sites and use thereon.
At the hearing, H & M abandoned any claim to the $40.00 credit or the $186.45 allegedly diverted delivery and requested judgment on the balance of the account, the sum of $20,529.59. Although the motion hearing was not transcribed, at the conclusion of the hearing the Circuit Court apparently let it be known to the parties that it was disposed to grant the plaintiff's motion for summary judgment.
Facing the imminent entry of judgment against them, Key and Reliance proceeded to muddy the theretofore clear factual waters. Before an order could be entered, Key and Reliance, perhaps realizing the inadequacy of their original response, filed a "Motion to Reconsider" supported by a more detailed, seven-page affidavit executed by Charles Webster. The affidavit makes broad allegations as to the involvement of W.H. Montgomery, Jr. and his family in other local businesses, including Cox Construction and the Bank of Edwards, a major creditor of Cox. Essentially, Key alleges in this affidavit that it was misled by Montgomery, acting in his capacity as a director of the bank, as to the financial condition of Cox. The affidavit further states that, in reliance upon the representations of Montgomery and his son, Key continued to do business with Cox and was damaged by this continued business association.
On October 8, 1986, five days after the Motion to Reconsider had been filed, Key filed a "Supplement to Motion to Reconsider". In this motion, Key claimed a right of set-off against Cox Construction, claiming *1321 that "there are questions of fact involving this case ... and disputes between Key and Reliance, on the one hand, and Cox Construction Company, Inc., on the other hand, on all of said subcontracts as to monies owed, the nature and amounts of set-offs as between all said parties, the effect that this would have on the claims of Cox's vendors and assignees, and related matters ..."
On December 15, 1986, the Circuit Court of Hinds County granted plaintiff's motion for summary judgment against and entered judgment summarily against Cox, Key and Reliance. On the principal claim of H & M, the Court held there were no disputed issues of material fact. As to the allegations contained in Key's post-hearing motions, the Court stated that Key and Reliance
first attempted to defend by averring that Key Constructors, Inc. had disputes with, and possibly set-offs against Cox Construction Company, and possibly others, involving this and other jobs, which the Court once found, and here finds, is not a reasonable or bona fide defense to this action by a materialman plaintiff ... Insofar as they attempt to assert other factors that might legally create an issue of fact, they first come too late and also address themselves to alleged irregularities in procedural matters which are in the discretion of the court and are found not to go to either the merits of the case nor to procedural fairness or due process.
The Court also awarded to H & M attorneys fees in the amount of $7,000.00. Key and Reliance now appeal the entry of judgment against them.

III.
This is an action against the prime contractor and his surety on a public works construction project. In 1980, the Mississippi Legislature substantially revamped the law in this area. 1980 Miss. Laws 1230 (codified at Miss. Code Ann. §§ 31-5-51 to -57 (Supp. 1980)). Federal law  the Miller Act  provided the model for this new statutory scheme relating to public works projects. 40 U.S.C. § 270a et seq. The particular portion of the Mississippi Code at issue in this case, Section 31-5-51(3), appears to have been taken verbatim from that portion of the Miller Act addressing the rights of persons furnishing labor or material to subcontractors engaged in public works projects. See 40 U.S.C. § 270b.
Any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety (90) days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be given in writing by the claimant to the contractor or surety at any place where the contractor or surety maintains an office or conducts business... . No such action may be maintained by any person not having a direct contractual relationship with the contractor-principal, unless the noticed required by this section shall have been given.
Miss. Code Ann. § 31-5-51(3) (Supp. 1980).
The federal government and most states require that general contractors performing public construction projects procure bonds to secure the payment to laborers and materialmen, as public property is not subject to private lien rights. Mississippi Fire Insurance Co. v. Evans, 153 Miss. 635, 652, 120 So. 738, 744 (1929). "The purpose of these provisions is to provide protection for persons providing materials on public construction projects in the absence of mechanics' and laborers' lien rights on public property." Aetna Casualty & Surety Co. v. Doleac Electric Co., 471 So.2d 325, 327 (Miss. 1985); See also Yarbrough, Rights and Remedies Under Mississippi's New Public Construction Bond Statute 51 Miss.L.J. 351 (1980). Suppliers of fuel consumed by construction *1322 machinery have been held to be within the protection afforded by the act. Standard Oil Co. v. National Surety Co., 143 Miss. 841, 855, 107 So. 559, 560 (1926); Houston General Insurance Co. v. Maples, 375 So.2d 1012, 1015 (Miss. 1979).
Language similar to that found in the Mississippi cases regarding the importance and purpose of these statutes can be found in the numerous opinions of federal courts construing the Miller Act since its enactment in 1935.
The Miller Act, 40 U.S.C. § 270a(a)(2), requires a general contractor on a federal project to post a bond to protect those who supply labor or materials for the project. The act allows a subcontractor's materials supplier to bring suit on the bond for any unpaid amounts owing for labor or materials, even if no contractual relationship exists between the general contractor and the supplier. 40 U.S.C. § 270b(a). The purpose of the act is to protect persons supplying materials and labor for federal projects, and it is to be construed liberally in their favor to effectuate this purpose. F.D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc., 417 U.S. 116, 124, 94 S.Ct. 2157, 2162, 40 L.Ed.2d 703 (1974).
United States v. Avanti Constructors, Inc., 750 F.2d 759, 761 (9th Cir.1984).

IV.
Key and Reliance first find fault with the Circuit Court's entering summary judgment in that H & M's complaint contained no affidavit regarding the correctness of the account. Key claims that the filing of an affidavit that the amount due on an open account is correct and attaching that affidavit to plaintiff's complaint is prerequisite to the granting of any judgment thereon. Key relies on Miss.Code Ann § 13-1-141 (1972). Key further alleges that the affidavit of W.H. Montgomery, Jr. filed by the plaintiff in support of its motion for summary judgment is inadequate to cure this defect of the original complaint. As such, the Circuit Court was without the undisputed factual basis necessary for it to summarily dispose of the action, or so the argument goes.
Before the adoption of the Mississippi Rules of Civil Procedure, the plaintiff suing on an open account could, at his option, annex to the complaint a sworn statement attesting to the accuracy of the amount due on the account in issue. Miss. Code Ann. § 13-1-141 (1972). The effect of attaching such an affidavit to the itemization of the account was, in the absence of a counter-affidavit contesting the accuracy of the plaintiff's computations, to foreclose the defendant from placing into issue the correctness of the amount sued upon, although the defendant could interpose any other defenses. Gwin v. Fountain, 159 Miss. 619, 650, 126 So. 18, 30 (1930).
The advent of the Mississippi Rules of Civil Procedure and the Mississippi Rules of Evidence has obviated the evidentiary effect of the statute. In any case, H & M has complied with all the applicable rules of civil procedure in filing its complaint and motion for summary judgment. Pursuant to Rule 10(d), H & M attached to its complaint a copy of the subcontract between Key and Cox, a copy of the surety contract between Key and Reliance, a copy of the notice sent by H & M to Key as well as copies of each and every invoice relied upon by H & M as a basis for the debt owed. Since Key registered no objection to the Complaint prior to the hearing on the summary judgment motion, it waived its advantage, if any, from the complained of deficiency, if it be such. Gilchrist Machinery Co., Inc. v. Ross, 493 So.2d 1288, 1293 (Miss. 1986).
To the extent that Key alleges that the failure of H & M to provide an affidavit attesting to the accuracy of the above-described documents subjects the complaint to dismissal, Key is plainly mistaken. A close reading of Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983), relied upon by Key and also dealing with a summary judgment rendered on an open account, reveals that the creditor's affidavit of accuracy in that case was submitted with the motion for summary judgment, not with the complaint. 444 So.2d at 364-65.
*1323 In any event, Key's attempt to manufacture a clash between the requirements of Rule 10(d) and Section 13-1-141 would avail it naught, as the statute would yield to the Mississippi Rules of Procedure in matters of pleading under Newell v. State, 308 So.2d 71 (Miss. 1975), and its progeny.
This assignment of error is without merit.

V.
Key next argues that the record discloses a factual dispute whether the diesel fuel sold to Cox was actually used in the Warren County project, precluding summary judgment. Key claims that the fuel represented by the invoices in this action was diverted by Cox to its earth-moving machinery used in other (unbonded) subcontracts. Additionally, Key asserts that its president's affidavit questioning the accuracy of H & M's computation of Cox's account was sufficient as a matter of law to avoid summary judgment.
Properly construed, Key's affidavit questions two charges, one for $186.45 and the other for $40.00. H & M has abandoned any claim to those amounts. Nothing Key has supplied has questioned any other part of H & M's $20,000.00 plus claim.
Rule 56 requires that the non-moving party wishing to avoid summary judgment be diligent in presenting sworn allegations based on first hand knowledge showing that there are genuine issues of material fact. Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc., 519 So.2d 413, 415 (Miss. 1988).
The motion shall be served at least ten days before the time fixed for the hearing. The adverse party prior to the day of the hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
Miss.Rule Civ.P. 56(c) (emphasis added). This court has noted in the past that "the time must arrive in every case where the [party] must demonstrate that there is a genuine issue for trial or have summary judgment entered against him." Bourn v. Tomlinson Interest, Inc., 456 So.2d 747, 749 (Miss. 1984). In the case of Biggers v. Fox, 456 So.2d 761 (Miss. 1984), the court addressed a similar situation, where the attorney opposing summary judgment filed counter-affidavits on the day of the hearing.
We will say this: when an attorney is aware that affidavits are needed by a court to reach a decision, it is neither fair to the court nor opposing counsel to wait until the hearing date to file the affidavit. We will not be kindly disposed to an attorney who charges error on the part of a judge who refused to consider such an affidavit, especially if it contains affirmative allegations.
456 So.2d at 763.
Even if we ignore the last minute feature of Key's opposition, its claim of a diversion by Cox is not material to an action on the debt owed H & M. It has been held in Miller Act actions as well as similar actions in other jurisdictions that diversion of material by a subcontractor does not work to exonerate a prime contractor or his surety from liability for the debt. United States ex rel. Carlson v. Continental Casualty Co., 414 F.2d 431, 433 (5th Cir.1969); United States ex rel. Sunbelt Pipe Corp. v. USF & G, 785 F.2d 468, 470 (4th Cir.1986). The court in Solite Masonry Units Corp. v. Piland Construction Co., Inc., 217 Va. 727, 232 S.E.2d 759 (1977), interpreting Virginia's "little Miller Act", held that:
We agree that it would be unjust to hold that Solite, which had in good faith supplied a subcontractor materials indispensable to Piland in the prosecution of the work, could be defeated in its actions on the payment bond because some of the materials were in fact diverted by Story [the subcontractor] to other construction jobs or to private use. It did not lie within the power of Solite to protect itself against the happening of such an event, other than to have required *1324 payment in cash for the blocks upon delivery  a requirement contrary to custom and usage.
232 S.E.2d at 761.
"[I]f, viewing the evidence in a light most favorable to the party against whom the motion has been made, that party's claim or defense still fails as a matter of law, summary judgment ought to be granted, even though there may be hot disputes regarding non-material facts." Vickers v. First Mississippi National Bank, 458 So.2d 1055, 1061 (Miss. 1984). Since Key's allegations of diversion did not constitute a fact material to any legally cognizable defense to H & M's suit, the Circuit Court was correct in discounting allegations regarding this diversion. The assignment is denied.

VI.
Key next argues that it was entitled to set-offs against Cox and that this precluded summary judgment. Under this assignment, Key re-alleges its theory of collusion between Montgomery, Cox and the Bank of Edwards, maintaining that the existence of a cozy business relationship between the owner of H & M, the co-defendant subcontractor and its major creditor raises issues material to H & M's claim. Key argues that the existence of potential set-offs alleged in its pending counterclaim against the subcontractor, when viewed in light of the alleged collusive activity, raises factual inferences precluding summary judgment. The point escapes us.
In Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983), the defendant-debtor attempted to avoid summary judgment by alluding to the unresolved factual issues surrounding her counter-claim based on the Truth In Lending Act (which she alleged would entitle her to a set-off in excess of the amount outstanding on her loan). 444 So.2d at 366. But the mere existence of an unresolved counter-claim unconnected with the original claim will not prevent the entry of judgment unless the counter-claim also constitutes some defense. "Except for her Truth In Lending argument, [defendant] offers no reason in law why the debt is not due and why judgment ought not be entered against her thereon. She is merely putting off the evil day of payment as long as possible." Brown, 444 So.2d at 364. As this Court stated in Shaw v. Burchfield, 481 So.2d 247 (Miss. 1985), "we have kept ever before us that basic tenet of Rule 56 theology that the existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact." 481 So.2d at 252. See also Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc., 519 So.2d 413, 415 (Miss. 1988).
Key never explains what possible relevance the Key/Cox dispute(s) could have to the claim of H & M. Indeed, the claim never rises to more than nebulous innuendo of the shotgun variety.
Moreover, the arguments offered by the prime contractor (and the resulting delay in the progress of the litigation) are precisely the evil which this legislation was enacted to prevent. The right of a materialman to make a demand on the contractor and/or his surety was legislatively created so that the supplier could distance itself from contractor/subcontractor disputes, thus assuring its prompt payment. Key's attempt to mire the claim of the materialman in the muddy issues surrounding its cross-claim will find no sanction in this Court.
The assignment is denied.

VII.
Key's final assignment of error[1] challenges the Circuit Court's order assessing it and Reliance with $7,000.00 in attorney's fees. Key does not challenge the authority of the court to award attorneys fees, for provision is made in the statute for the award to a materialman such as H & M of "a reasonable amount to be determined by the trial judge as claimant's attorney's fees." Miss. Code Ann. § 31-5-57 (Supp. 1988). Key's point is that there is no evidence in the record showing the nature and *1325 extent of the legal services, nor is there proof of the reasonableness of the $7,000.00 award. Key is correct.
Though our earlier cases were fuzzy on the point, our law in recent years has in no uncertain terms provided that the matter of "reasonable attorneys fees" requires proof. The court may not judicially note what is a reasonable fee and it certainly may not merely pull a figure out of thin air. Rather, the party entitled to recover a reasonable fee must furnish an evidentiary predicate therefor. See Sanford v. Jackson Mall Shopping Center Co., 516 So.2d 227, 230 (Miss. 1987); Lovett v. E.L. Garner, Inc., 511 So.2d 1346, 1354 (Miss. 1987). The record before us reflects no such predicate.
H & M having had its opportunity to offer proof on this issue and having failed to do so, we have no alternative but to reverse so much of the judgment below as awards attorneys fees in favor or H & M and against Key and the other defendants and render the point here. Lovett, 511 So.2d at 1354.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.
DAN M. LEE, P.J., dissents.
NOTES
[1] In addition to the points discussed in this opinion, Key presents two further assignments of error, neither of which merits either comment or reversal. Each is denied.