968 So.2d 444 (2006)
NATCHEZ ELECTRIC AND SUPPLY CO., INC., Appellant
v.
Wayne JOHNSON d/b/a Johnson Electric, Appellee.
No. 2004-CA-00155-COA.
Court of Appeals of Mississippi.
February 14, 2006.
Rehearing Denied June 20, 2006.
*447 Clifford C. Whitney, Vicksburg, attorney for appellant.
Scott Joseph Schwartz, Hattiesburg, attorney for appellee.
Before LEE, P.J., IRVING and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. Natchez Electric & Supply Co., Inc. sold electrical materials on open account to Wayne Johnson d/b/a Johnson Electric (Johnson), a commercial electrical contractor. On June 6, 1997, Natchez Electric filed suit against Johnson in the Circuit Court of Forrest County to collect on the account. Johnson filed an answer and counterclaim asserting breach of contract and intentional and negligent infliction of emotional distress. In his breach of contract counterclaim, Johnson asserted that he had paid Natchez Electric for materials which had not been delivered to him and that Natchez Electric had provided him with inaccurate cost estimates for electrical jobs. During the jury trial, the Circuit Court of Forrest County directed a verdict in favor of Natchez Electric on Johnson's emotional distress claims.
¶ 2. The jury found that Johnson was not indebted to Natchez Electric on the open account. The jury further found that Natchez Electric had breached its contract with Johnson, but awarded Johnson zero damages. Natchez Electric appeals, arguing (1) that Natchez Electric was entitled to a JNOV; (2) that the verdict was against the overwhelming weight of the evidence; (3) that the trial court erroneously admitted testimony concerning theft by a Natchez Electric employee, necessitating a new trial; and (4) that Johnson failed to prove his counterclaim for breach of contract.
*448 ¶ 3. We find that, concerning the majority of the materials sold to Johnson on open account, the evidence was insufficient to support a jury finding of no liability. We further find that there was insufficient evidence to support a verdict for Johnson on his breach of contract claim. Therefore, we affirm in part and reverse in part, and render a judgment for Natchez Electric in the amount of $39,098.83.

FACTS
¶ 4. The following evidence was adduced at the trial. Natchez Electric is an electrical parts supplier which primarily sells to electrical contractors and other commercial customers. Johnson was a frequent customer at Natchez Electric's branch office in Hattiesburg. Beginning in May of 1993 and ending in July 1996, Natchez Electric sold Johnson over $200,000 worth of electrical materials on open account.
¶ 5. For materials purchases, Johnson or one of his employees would contact Natchez Electric with a list of the materials Johnson needed for a particular job. Then, Natchez Electric generated a delivery ticket that listed the materials. Natchez Electric's employees gathered the materials. Often, Johnson or one of his employees picked up the materials from Natchez Electric's sales counter. On other occasions, Natchez Electric delivered the materials to the job site. Once the materials had been picked up or delivered, Natchez Electric sent Johnson an invoice that billed him for the materials, Periodically, Johnson made payments toward the account. Over the history of the account, Johnson paid Natchez Electric $211,944.67 for his materials purchases.
¶ 6. In May 1996, Johnson expressed concerns about his account to Stacy Taggert, the branch manager of Natchez Electric's Hattiesburg office. Johnson was worried that he had been over billed for some of his materials purchases. Taggert testified that, over the next few weeks, he and Johnson met weekly to discuss the billing problem. Taggert stated that, at these meetings, he and Johnson compared Natchez Electric's invoices indicating certain materials had been delivered to Johnson with Johnson's own business records indicating which materials he had received. Together, Taggert and Johnson discovered that Natchez Electric inadvertently had overbilled Johnson for some of his materials purchases.
¶ 7. Taggert testified that approximately half of these errors were attributable to Johnson's being billed for one unit of a certain item when he should have been billed for a single item. For example, in one instance, Johnson was charged $250, the price of a unit of one hundred face plates, when he should have been charged $2.50, the price of a single face plate. On May 29, 1996, Natchez Electric issued Johnson a credit in the amount of $19,025.70. Taggert testified that this amount compensated Johnson for the total billing errors throughout the history of the account as agreed upon by Natchez Electric and Johnson. As reflected by a copy of the account, Natchez Electric applied the credit to Johnson's outstanding invoices.
¶ 8. Taggert testified that, after the credit was issued, Johnson still had unpaid invoices totaling $41,794.45. Kally Dennig, who oversaw Natchez Electric's accounting and bookkeeping, testified that this amount was correct. The invoices reflecting the debt were admitted into evidence, along with delivery tickets associated with the invoices. Taggert stated that these invoices contained billing errors, but that the amount of the erroneous billings had already been credited to Johnson's account by the $19,025.70 credit. Therefore, Taggert asserted that Johnson owed Natchez *449 Electric the total amount reflected by the invoices.
¶ 9. Johnson testified that he never agreed that the $19,025.70 credit covered the totality of the billing errors. Johnson testified that Taggert told him the billing errors were caused by a Natchez Electric employee, Chris Fortenberry, selling material "out the back door" and then billing Johnson. Johnson stated that Taggert planned to fire Fortenberry and requested Johnson's presence during the firing. Johnson refused.
¶ 10. Taggert denied that the billing errors were attributable to employee theft. Taggert stated that Natchez Electric had investigated the possibility of employee theft, but concluded that it had not occurred. Nonetheless, Natchez Electric fired Fortenberry on the same day it issued the credit to Johnson. Taggert testified that Fortenberry was fired for his mismanagement of Johnson's account including pricing errors and failure to credit the account for material returns. Fortenberry testified that he had not stolen materials from the store and had not been fired for stealing.
¶ 11. With the evidence of Fortenberry's theft, Johnson attempted to cast doubt on the correctness of the amount he owed on the account. Johnson also argued that additional billing errors might exist that went uncorrected by the $19,025.70 credit. Johnson testified about several billing errors; Taggert testified that these errors had been corrected by the credit. Johnson further asserted that he owed nothing on the account because it was uncertain whether he had received all of the materials for which he had been billed. As previously mentioned, each invoice billing Johnson for materials had an associated delivery ticket. An employee of Robinson Electric Supply testified that it was customary for electrical supply stores to have the person picking up or accepting delivery of materials to sign the delivery ticket as proof of delivery. The Robinson Electric employee further testified that delivery tickets associated with items that shipped to the customer directly from the manufacturer would not bear the recipient's signature.
¶ 12. The record reflects that not all of the delivery tickets matching the outstanding invoices were signed. Some of the tickets did not show the name of the person who received the materials. Other delivery tickets bore a printed name of the person receiving the materials. It was established that, on these tickets, a Natchez Electric employee had printed the name of the Johnson employee who received the materials instead of obtaining a signature from the employee. Taggert and Fortenberry testified that Johnson had requested that Natchez Electric not obtain a signature from his employees if doing so would take extra time. Johnson did not refute this testimony, and admitted to having picked up materials from Natchez Electric himself without signing a delivery ticket. However, Johnson asserted that, since not all of the outstanding invoices were signed, it could not be shown that he had actually received all of the materials billed.
¶ 13. Moreover, Johnson asserted that he owed nothing on any invoices for materials used on his Red Lobster restaurant job. Johnson averred that he had bought all of the electrical supplies for the Red Lobster job from another electrical supplier, except for some material he bought from Natchez Electric and paid for in full. Johnson testified that, because he had not bought material for the Red Lobster job from Natchez Electric, the invoices for the Red Lobster job materials could not have been accurate.
¶ 14. The jury found in favor of Johnson, and Natchez Electric appeals.

*450 LAW AND ANALYSIS
I. WHETHER SUFFICIENT EVIDENCE SUPPORTED THE JURY'S VERDICT THAT JOHNSON WAS NOT LIABLE ON THE ACCOUNT.
¶ 15. The trial court denied Natchez Electric's motion for a judgment notwithstanding the verdict. On appeal, Natchez Electric argues that the evidence was insufficient to support the jury's finding that Johnson was not liable on the account. Natchez Electric argues that it was entitled to a JNOV concerning all the delivery tickets that were signed because the signatures proved that Johnson had received the materials and, thus, that he was responsible for payment for those materials. Alternatively, Natchez Electric contends that it was entitled to a JNOV concerning all of the delivery tickets, including those affixed with printed names and those with no name affixed.
¶ 16. The question of Natchez Electric's entitlement to a JNOV implicates the burdens of proof applicable to a suit on an open account. "An open account is a type of credit extended through an advance agreement by a seller to a buyer which permits the buyer to make purchases without a note of security and is based on an evaluation of the buyer's credit." Cox v. Howard, Weil, Labouisse, Friedrichs, Inc., 619 So.2d 908, 914 (Miss. 1993). An open account is an unwritten contract. McArthur v. Acme Mechanical Contractors, Inc., 336 So.2d 1306, 1308 (Miss.1976). In essence, a suit on an open account is "an action to collect on a debt created by a series of credit transactions." Allen v. Mac Tools, Inc., 671 So.2d 636, 644 (Miss.1996).
¶ 17. The burdens allocated to the plaintiff and defendant in an open account suit formerly were established by statute. Miss.Code Ann. § 11-7-45; § 13-1-141 (repealed). Section 11-7-45 required the plaintiff to attach to the complaint a copy of the account showing the date of purchase, the kind of goods, the quantity, and the price. Motive Parts Warehouse, Inc. v. D & H Auto Parts Co., Inc., 464 So.2d 1162, 1165 (Miss.1985). Pursuant to section 13-1-141, the plaintiff could attach to the complaint an affidavit attesting to the correctness of the account and stating that it was due from the defendant. Id. at 1164-65. The affidavit entitled the plaintiff to judgment unless the defendant filed a counter-affidavit averring that the account was not correct and particularizing wherein it was not correct. Id. at 1165. By submitting a counter-affidavit, the defendant admitted the existence of the account but denied its correctness. Walker v. Cleveland Lumber Co., Inc., 512 So.2d 695, 696 (Miss.1987). In the presence of a counter-affidavit, "the affidavit to the account [entitled] the plaintiff to judgment only for such part of the account as the defendant by his affidavit [did] not deny to be due." Motive Parts Warehouse, Inc., 464 So.2d at 1165 (quoting Miss.Code Ann. 13-1-141 (repealed)).
¶ 18. "The statutes provide[d] a rule of evidence whose purpose [wa]s to dispense with proof of the correctness of the account." Id. at 1165. Prior to their repeal, the evidentiary effect of these statutes was obviated by the Mississippi Rules of Civil Procedure and the Mississippi Rules of Evidence. Key Constructors Inc. v. H & M Gas Co., 537 So.2d 1318, 1322 (Miss.1989). Now, pursuant to Mississippi Rule of Civil Procedure 10(d), a claim or defense founded on an account must be accompanied by a copy of the account attached to the pleading "unless sufficient justification for its omission is stated in the pleading." The parties' burdens of proof are those applicable to other claims governed *451 by the Mississippi Rules of Civil Procedure. Id. at 1323.
¶ 19. A motion for a JNOV challenges the legal sufficiency of the evidence. Investors Prop. Mgmt., Ltd. v. Watkins, Pitts, Hill & Assoc., 511 So.2d 1379, 1381 (Miss.1987); see M.R.C.P. 50(b). On review of the denial of a JNOV,
This Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.
Blake v. Clein, 903 So.2d 710, 731(¶ 61) (Miss.2005) (quoting Ala. Great S.R.R. v. Lee, 826 So.2d 1232, 1235-36(¶ 12) (Miss. 2002)).
¶ 20. Johnson argues that the jury's verdict was supported by substantial evidence such that reasonable jurors could have reached different conclusions as to his liability on the account. Essentially, Johnson's defense to the debt was that Natchez Electric could not show conclusively that he received all of the materials billed. Natchez Electric contends that, given the evidence of Johnson's debt to Natchez Electric, Johnson's evidence of non-delivery was insufficient, to create a factual dispute for the jury as to whether the materials actually were delivered to Johnson.
¶ 21. We find that Natchez Electric's proof of the correctness of the debt evidenced by the delivery tickets with signatures, printed names, and for directly shipped items was such as to have entitled Natchez Electric to a JNOV. While recognizing that the rigid burden-shifting scheme imposed by statutory practice has been abandoned, we find that, in light of the evidence of the correctness of the account, Johnson's proof of the account's incorrectness had to be more specific than his general allegations of billing errors. Our analysis follows.
¶ 22. At the trial, it was established that the custom and practice of the electrical supply industry was for the supplier to obtain the signature of the person receiving materials. Johnson admitted that a signed delivery ticket constituted proof of delivery. Johnson wholly failed to submit any evidence, beyond his own nebulous allegations, that any outstanding invoice contained a billing error for which he had not already been credited. Thus, Johnson failed to present sufficient evidence from which the jury could have concluded that he was not indebted to Natchez Electric in the amount reflected by the signed delivery tickets and their associated invoices.
¶ 23. Further, Johnson never refuted the testimony of Taggert and Fortenberry that he had instructed his employees to accept material from Natchez Electric without signing a delivery ticket. In fact, Johnson admitted to having picked up material from Natchez Electric without signing a delivery ticket. Taggert and Fortenberry testified that, when Johnson or his employees picked up material without signing for it, a Natchez Electric employee would print the name of the person having received the materials. In rebuttal, Johnson testified that Fortenberry was selling material "out the back door" and billing it to Johnson's account. But, Johnson did not point to any specific billing error caused by theft by Fortenberry. Beyond his testimony that he did not receive all of *452 the materials billed, Johnson presented no evidence that he did not get a specific item. While Johnson's testimony could have cast some doubt upon the correctness of the account, his uncorroborated allegations of theft by Natchez Electric employees, with nothing more specific, was insufficient to enable a reasonable juror to reject Natchez Electric's proof that Johnson had received the materials listed on the delivery tickets bearing printed names.
¶ 24. Natchez Electric was also entitled to a JNOV concerning certain delivery tickets showing that the listed items had shipped directly from the manufacturer to Johnson. Taggert testified that Natchez Electric's delivery tickets for direct shipments would not bear the recipient's signature because the signature would appear on the shipper's delivery receipt. Johnson admitted that a delivery ticket for a direct shipment would not bear a signature. There was no evidence from which a reasonable jury could have found that Johnson was not indebted for invoices associated with delivery tickets for directly shipped materials.
¶ 25. We address the matter of the invoices with associated "blank" delivery tickets bearing no signature or printed name. As previously stated, it was established that the custom and practice of the electrical supply industry was for the supplier to obtain the signature of the recipient of materials. It was further established that the ordinary course of business between Natchez Electric and Johnson was for Johnson's employees often to pick up materials without signing, and then for a Natchez Electric employee to print the recipient's name on the delivery ticket as proof of delivery. Based on this evidence of the industry custom and the parties' own practice, the delivery tickets with no signed or printed name were not sufficient proof that material had been delivered to Johnson to entitle Natchez Electric to a JNOV. Therefore, we affirm the jury's finding that Johnson was not indebted to Natchez Electric concerning any invoice associated with a blank delivery ticket.
¶ 26. We last address the matter of the invoices for materials used on Johnson's Red Lobster job. At any given time, Johnson was working on several electrical jobs. Taggert and Fortenberry testified that Natchez Electric employees noted on each invoice the job for which the materials were intended based upon instruction from Johnson's employees. Johnson testified that he bought all of his material for the Red Lobster job from Robinson Electric, not from Natchez Electric. Johnson surmised that Natchez Electric had billed him for materials he had bought elsewhere. Johnson admitted that he never compared his materials invoices from Natchez Electric and Robinson with his materials records for the Red Lobster job. We find there was insufficient evidence to distinguish the Red Lobster invoices from the other invoices admitted at the trial. Viewing the evidence in the light most favorable to Johnson, Johnson's testimony was too speculative to enable a reasonable juror to conclude that Johnson did not receive the invoiced Red Lobster materials in the face of a delivery ticket bearing a signature or printed name, or for directly shipped items.
¶ 27. In conclusion, we find that there was insufficient evidence to support the jury's finding that Johnson was not indebted to Natchez Electric. We have reviewed the evidence adduced by both parties at the trial and find that Natchez Electric was entitled to a JNOV concerning all of the invoices associated with signed delivery tickets, delivery tickets with printed names, and delivery tickets for directly *453 shipped items.[1] Concerning these invoices, the evidence pointed so overwhelmingly in favor of Natchez Electric that reasonable jurors could not have arrived at a finding for Johnson. Blake, 903 So.2d at 731(¶ 61). We reverse and render a verdict for Natchez Electric in the amount of $39,098.83, the amount reflected by the above listed invoices. We affirm the jury's finding of no liability concerning the invoices accompanied by "blank" delivery tickets.
Attorney's fees
¶ 28. As we are entering judgment for Natchez Electric, we must address its request for attorney's fees. The issue of attorney's fees in a suit on an open account is governed by Mississippi Code Annotated section 11-53-81. Section 11-53-81 provides, in pertinent part,
When any person fails to pay an open account within thirty (30) days after receipt of written demand therefor correctly setting forth the amount owed and an itemized statement of the account in support thereof, that person shall be liable for reasonable attorney's fees to be set by the judge for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the plaintiff. . . . If that person sued on the open account shall prevail in the suit, he shall be entitled to reasonable attorney's fees to be set by the judge.
Natchez Electric argues that it is entitled to attorney's fees pursuant to section 11-53-81. Indeed, Natchez Electric gave Johnson a written demand for payment of the account, and Johnson did not pay the amount owed within thirty days.
¶ 29. Notwithstanding Natchez Electric's compliance with the demand requirement, we find that Natchez Electric was not entitled to attorney's fees. For entitlement to attorney's fees pursuant to section 11-53-81, "a plaintiff must secure a `judgment on the claim' in the amount sued for." Rainbow Rental and Fishing Tools, Inc. v. Delta Underground Storage, Inc., 542 So.2d 258, 263 (Miss.1989) (but stating that, had the amount recovered "lacked but a few dollars, being the entire amount sued for on open account, [it would put] an entirely different posture on th[e] case"). In Rainbow Rental, Rainbow claimed $32,357.98 on open account, but recovered a judgment for $5,529, a sum for which the defendant had been willing to settle prior to the lawsuit.
¶ 30. While we have found that Natchez Electric was entitled to a JNOV concerning the majority of the outstanding invoices, we have affirmed the jury's finding of no liability concerning other invoices. We find that, since both Natchez Electric and Johnson have partially prevailed in this case, Natchez Electric is not a prevailing plaintiff within the meaning of section 11-53-81 and is not entitled to statutory attorney's fees.
II. WHETHER NATCHEZ ELECTRIC IS ENTITLED TO A NEW TRIAL BECAUSE THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 31. The weight of the evidence is challenged by a motion for a new *454 trial and is addressed to the trial court's sound discretion. We will reverse the trial court's denial of a motion for a new trial only for abuse of discretion. In determining whether the verdict was against the overwhelming weight of the evidence, we review all of the evidence as a whole, in the light most favorable to the verdict, and generally accept as true all of the credible evidence in favor of the non-moving party. Brandon HMA, Inc. v. Bradshaw, 809 So.2d 611, 616(¶ 13) (Miss.2001); Green, 641 So.2d at 1203. We will reverse only if "no reasonable, hypothetical juror could have found as the jury found." Brandon HMA Inc., 809 So.2d at 616(¶ 13).
¶ 32. A motion for a new trial requires a lesser showing than a motion for a JNOV. Investors Prop. Mgmt., Ltd. v. Watkins, Pitts, Hill & Assocs., 511 So.2d 1379, 1381 (Miss.1987). Therefore, for those claims on which we have found that Natchez Electric was entitled to a JNOV, its motion for a new trial is moot. Concerning the invoices for which Natchez Electric was not entitled to a JNOV, viewing the evidence in the light most favorable to the verdict, we find that the verdict was not against the overwhelming weight of the evidence. This issue is without merit.
III. WHETHER NATCHEZ ELECTRIC WAS ENTITLED TO A NEW TRIAL BASED ON THE ERRONEOUS ADMISSION OF TESTIMONY THAT FORTENBERRY STOLE MATERIALS.
¶ 33. Natchez Electric filed a motion in limine to exclude the evidence of Fortenberry's alleged theft of materials. The motion was based upon Johnson's deposition testimony that he did not know if any of the materials billed to his account in fact had been stolen by Fortenberry. Natchez Electric argued that the theft evidence was more prejudicial than probative. M.R.E. 403. The trial court denied the motion.
¶ 34. Natchez Electric argues that the admission of the theft evidence was error entitling Natchez Electric to a new trial. This Court reviews the trial court's admission or exclusion of evidence for abuse of discretion. Terrain Enterprises v. Mockbee, 654 So.2d 1122, 1131 (Miss.1995). Even if we find that the lower court's decision was error, we will not reverse unless the error affected a substantial right of a party. M.R.E.103 (a).
¶ 35. Natchez Electric renews its argument that, since Johnson could not show that any of the materials billed to his account actually had been stolen by Fortenberry, the theft evidence was more prejudicial than probative. Mississippi Rule of Evidence 403 provides that evidence, though relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The theft evidence, though not linked to any specific materials and, therefore, insufficient to defeat Natchez Electric's proof of delivery, was probative of whether Natchez Electric had overbilled Johnson for materials purchases. Given the broad discretion afforded to the trial court in conducting the Rule 403 balancing test, we find that the trial court did not abuse its discretion in finding that the theft evidence was not substantially prejudicial to warrant its exclusion.
IV. WHETHER SUFFICIENT EVIDENCE SUPPORTED THE JURY'S VERDICT THAT NATCHEZ ELECTRIC BREACHED ITS CONTRACT WITH JOHNSON.
¶ 36. Johnson asserted two breach of contract claims against Natchez *455 Electric. Firstly, Johnson argued that Natchez Electric had breached its oral contract to sell materials to Johnson by failing to deliver the materials he ordered. Secondly, Johnson argued that Natchez Electric had breached a contract to provide Johnson with materials quotes for Johnson's electrical contracting jobs by incorrectly quoting materials costs to Johnson. The jury found for Johnson on both these claims, but awarded him zero damages.[2] Natchez Electric contends that the evidence was insufficient to sustain the jury's verdict and, therefore, the trial court should have granted a JNOV concerning Johnson's breach of contract claims. We agree.
¶ 37. To prove a breach of contract, the plaintiff must show by the preponderance of the evidence (1) the existence of a valid and binding contract; (2) that the defendant has breached the contract; and (3) that the plaintiff has been damaged monetarily as a result of the breach. Warwick v. Matheney, 603 So.2d 330, 336 (Miss.1992). Regarding Johnson's claim that Natchez Electric breached its contract by failing to deliver materials ordered, we observe that we have already found that, regarding the majority of the materials invoices, the evidence was insufficient to support a verdict for Johnson. Concerning the materials invoices for which we hold Natchez Electric was not entitled to judgment, Johnson did not show that he suffered any damage as a result of being billed for materials that he did not receive. Johnson did not show that he ever paid for these materials; in fact, this lawsuit was an attempt to collect from Johnson on the unpaid debt. There was insufficient evidence to support a verdict for Johnson on his breach of contract counterclaim. The trial court erred by refusing to enter a JNOV for Natchez Electric concerning this counterclaim.
¶ 38. Next, we review the evidence pertaining to Johnson's claim that Natchez Electric had failed to provide him with accurate materials quotes for electrical jobs. This evidence consisted of Johnson's testimony, corroborated by Fortenberry, that Natchez Electric had provided quotes for several of Johnson's electrical jobs. To formulate a quote, a Natchez Electric employee reviewed the plans and specifications for the project, discerned which electrical materials were necessary for the job, priced the materials, added up the prices to arrive at a total estimated cost, and then sold the materials to Johnson at the quoted prices. Johnson testified that several of Natchez Electric's quotes had been unduly high. Johnson presented no proof that he lost any money as a result of Natchez Electric's misquotes, such as lost project bids or overpayment for materials purchases. Thus, Johnson failed to submit proof that he suffered any damage from the misquotes. Consequently, there was insufficient evidence to enable a reasonable jury to find that Natchez Electric breached its contract to provide materials quotes to Johnson, and Natchez Electric was entitled to a JNOV concerning this claim.

CONCLUSION
¶ 39. We affirm in part and reverse and render in part a judgment for Natchez *456 Electric in the amount of $39,098.83, and reverse and render a judgment for Natchez Electric on Johnson's breach of contract counterclaims.
¶ 40. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART AND JUDGMENT IS ENTERED FOR THE APPELLANT IN THE AMOUNT OF $39,098.83. ALL COSTS OF THIS APPEAL ARE ASSESSED IN EQUAL PARTS TO THE APPELLANT AND THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, JJ., CONCUR.
NOTES
[1] The Court has meticulously sifted through the approximately 250 invoices submitted by Natchez Electric that reflect the outstanding debt claimed of $41,794.45. Of these invoices, Natchez Electric has excerpted twenty-four invoices that were unaccompanied by delivery tickets with signatures or printed names, or for directly shipped items. However, this Court has identified eight additional invoices that were either associated with "blank" delivery tickets or which had no associated delivery ticket. Therefore, there is a total of thirty-two invoices totaling $2,695.62 for which we affirm the jury's verdict of no liability.
[2] The jury was instructed to find for Johnson if he proved the elements of breach of contract, including actual damages, and to award Johnson compensatory damages, if any. The jury awarded zero damages. This was analogous to the zero damage verdict for breach of contract awarded by the jury in A & F Prop., LLC v. Lake Caroline, Inc., 775 So.2d 1276 (Miss.Ct.App.2000). In that case, we found that the zero damage award was unsupported by the evidence and reversed and rendered an award of $63,249. Id. at (¶¶ 18-19). Notably, we found no deficiency in the jury's conclusion that the contract had been breached.