# Staunton.

## The United States Fidelity & Guaranty Co. v. Jordan and Others.

### September 12, 1907.

1. County Treasurers—*Ex Parte Settlements—Prima Facie Evidence Against Sureties.*—The settlements made by a county treasurer with the board of supervisors of a county are, as against his sureties who have only bound themselves for the faithful discharge by him of the duties of his office, not conclusive, but only *prima facie* evidence of the balance in his hands at the dates of such settlements, respectively. The sureties are not regarded as in privity with their principal so as to be conclusively bound by his acts. *Baker* v. *Preston,* Gilmer 228, *Overruled.*

2. Equity Jurisdiction—*Settlement of Accounts—Remedy at Law—County Treasurers—Defaults on Different Bonds.*—Where sundry motions for judgments are pending against a county treasurer and the sureties on different bonds covering different periods, and it is claimed that the balances shown by his settlements during his first term were mere paper balances, and that he had squandered the public funds, and had used the revenue received during a second term to pay off delinquences accruing in the first term, a surety for the second term may go into a court of equity and have the proceedings on said motions enjoined, and proper accounts settled so as to ascertain in what fiscal years the defalcations accrued and the amounts thereof, and settle and determine the rights and liabilities of the sureties and co-sureties on the several bonds. It may be that such surety might have been able to make his defense at law, but it is plain that his remedy there is far less complete and adequate than in equity.

Appeal from a decree of the Circuit Court of Pulaski county. Decree for the defendants. Complainant appeals.

*Reversed.*

The bill in this cause alleges that H. L. Stone executed sundry different bonds as treasurer of Pulaski county, the sureties on which were not the same. The first, on June 8, 1895, to cover his term of office from July 1, 1895, to July 1, 1899. A new bond, on February 6, 1899, to cover the residue of said term. A temporary bond on June 5, 1899 to cover another term, to which he had been elected, from July 1, 1899, to July 1, 1903, and, finally, on July 5, 1899, the bond on which appellant become surety, which was given in lieu of the bond last mentioned. The bill charges that, from the very first, Stone squandered and misappropriated the public revenue, using it to pay his personal debts as a merchant, for the purpose of speculation and for other improper purposes, and that, while his settlements during his first term showed large balances in his hands as treasurer, he did not, in fact, have the amount of those balances on hand, but had wasted and squandered the money, and that the balances were mere paper balances, with no actual funds to meet them; that appellant was induced to become surety by misrepresentations of Stone and others, and as soon as it became surety, Stone diverted and misappropriated the revenue derived from the fiscal year, beginning July 1, 1899, towards the liquidation of his arrearages for the previous years, so as to shift the burden of those arrearages from the shoulders of former sureties on to appellant. The bill enumerates the amounts and dates of some of the misappropriations thus made. It is then charged that Stone, realizing that he would be removed from his office, by reason of his defalcations, tendered his resignation as treasurer, which was accepted October 2, 1900, and that O. E. Jordan was appointed his successor; and that Stone was directed to settle his accounts with the board of supervisors, but had failed to do so.

The bill then charges the pendency of five different motions in the Circuit Court of Pulaski county, brought by O. E. Jordan, treasurer of Pulaski county, against Stone and his sureties on his different bonds, claiming upwards of $50,000. In three

of these motions, appellant is made a defendant along with the sureties on the bond dated June 5, 1899.

The bill then proceeds as follows:

"All of the said deficits, for which notice has been given, as aforesaid, of motions for judgments against your orator, were created by said H. L. Stone as treasurer, and he and other sureties of his became liable therefor, before your orator became his surety, and your orator is in no wise responsible or liable for the same. Your orator only became and is responsible for the faithful discharge by said Stone of his duties as treasurer of Pulaski county, from July 5th, 1899, to October 2nd, 1900, when his resignation was accepted by said county court; and if the revenues of the fiscal years of 1899-1900 and 1901 are faithfully applied to the liabilities of those years, your orator will not be found liable for any amount whatever.

"Your orator is advised and avers that its defense to said motions is inadequate and incomplete at law, and that it is entitled to come into a court of equity for relief in the premises. The said Stone, treasurer, has intermingled separate and distinct funds, and used portions of all funds that came into his custody after your orator became his surety to pay his derelictions before your orator became his surety, and has kept loose and unsatisfactory books of account, and a settlement of his affairs as late treasurer of Pulaski county involves a very complicated account, which necessitates a reference of the matter to a master commissioner. The rights and liabilities of different sets of sureties are involved, and questions of contribution between the sureties are raised. A resort to equity is necessary to compel the settlement of Stone as treasurer of Pulaski county, which was ordered by the county court of said county upon the acceptance by it of his resignation, and which is required by law. The said Stone, treasurer, has been very lax in making settlements required by law, and other officers have not been as punctilious in the performances of their duties pertaining to the office of treasurer as they might have been. During the

whole time he was treasurer, the said Stone failed to make the bi-monthly statements required by section 858 of the Code of Virginia of 1887, and the clerk of the county court failed to certify his failure to the grand jury as required by said section. He failed to furnish the auditor of public accounts, at the date of his annual settlements with the auditor, a statement, showing the receipts and disbursements of the county for the preceding year, as required by the act of the General Assembly of Virginia, approved March 3rd, 1898, and found in the acts of said Assembly, 1897-98, on page 940. The said county court and board of supervisors never exercised their authority under section 861 of said Code of 1887, to require him to furnish an account of the receipts and expenditures of the county, and a statement of his accounts as treasurer thereof.

"The county court, as a rule, never ordered a commissioner to examine and report upon his official bond as required by section 855 of the said Code of 1887. He frequently failed to settle with the board of supervisors at its annual July meeting, or within sixty days thereafter, as required by law. In 1899 he did not make any settlement with them until November 3, 1899. Your orator is advised that it is not bound by said settlement of November 3, 1899, nor by any of his settlements after it became his surety, but is entitled to impeach them, and show that they are incorrect. His settlements with the board of supervisors and the county school board, and all of his other settlements after your orator became his surety, showing balances in his hands, are incorrect in this, that he did not have those balances in his hands, and the deficits occurred before your orator became his surety, and his sureties at the time said deficits occurred are liable for same, and not your orator. Your orator is ready and willing to pay for any deficits for which it is justly liable, but for no others. Your orator is advised and avers that said H. L. Stone is the owner of both real and personal estate in the said county of Pulaski, and that your orator is entitled to resort to a court of equity to compel an

exhaustion of said Stone's own property towards the payment of his official defalcations before your orator can be required to pay any portion of the same.

"Your orator is also advised that, in view of all the premises, a resort to equity by it will prevent a multiplicity of suits.

"Being remediless in the premises, save in a court of equity, where matters of this sort are properly cognizable, your orator prays that O. E. Jordan, as treasurer of Pulaski county, and H. L. Stone, in his individual capacity, and as late treasurer of Pulaski county, and * * * (sureties on the several bonds above mentioned), be made parties defendant to this bill, and required to answer the same, but answer on oath is waived as to each and all of them; that your honor will enjoin the said O. E. Jordan, treasurer of Pulaski county, from proceeding with the said motions of which notice has been given as aforesaid, or any of them; that your honor will compel said H. L. Stone, late treasurer of Pulaski county, to settle his accounts as of the date of the acceptance of his resignation; that your honor will enquire and ascertain in what fiscal years the said Stone, treasurer, etc., was guilty of defalcations, and the amounts thereof, and determine and adjudicate what set, or sets, of his sureties are liable for the same, and decree all proper contribution between sets of sureties and between co-sureties, and first subject the estate, real and personal, of said H. L. Stone toward the payment of his defalcations as treasurer, and to these ends order all necessary and proper accounts to be taken and reported; that your honor will grant unto your orator all such further and general relief as is suitable to the nature of the case and agreeable to equity and good conscience; that spa. in chancery may issue, etc., and your orator, as in duty bound, will ever pray, etc."

*T. L. Massie,* for the appellant.

*Jno. S. Draper, S. W. Williams, D. S. Pollock,* and *Selden Longley,* for the appellees.

Buchanan, J., delivered the opinion of the court.

H. L. Stone was treasurer of Pulaski county from the year 1890 until the year 1900, during which time he executed six bonds with different sets of sureties. The last of these bonds was executed July 5, 1899, with the appellant as his surety, for the remainder of the term, commencing July 1, of that year, in lieu of a bond executed on the 5th day of June, 1899.

By section 862 of the Code of 1887 it is provided that the treasurer shall receive the county levy in the manner required for the receipt of state revenues, and shall, at the July meeting of the board of supervisors, or as soon thereafter as may be, settle with the board his accounts for that year.

Stone made settlements each year he was treasurer, until November 3, 1899, when he made his last settlement with the supervisors. For the year beginning July 1, 1899, and ending June 30, 1900, and from July 1, 1900, until October of that year, when he resigned, being a defaulter, no settlement was made by him with the supervisors. These various settlements showed balances in his hands, due the county on account of roads, schools and county levies. According to the settlement of November 3, 1899, there was a large balance due on these several accounts.

To recover the moneys due the county from Stone when he resigned as treasurer, the appellee, Jordan, who succeeded him in office, was proceeding by notices and motions when the appellant instituted this suit, in which Jordan was enjoined from prosecuting the said motions. Upon a hearing of the cause, the circuit court held that the settlement of November 3, 1899, showed the amount due from Stone to the county and in his hands as treasurer as of that date, and that such settlement was conclusive upon the appellant, his surety, at the time that settlement was made, and so decreed. That action of the court is assigned as error.

It is conceded that the settlement was *prima facie* evidence

against the appellant; and it is further conceded, as we understand the argument of the appellant's counsel, that the ruling complained of is in accord with the decision of the special court of appeals in *Baker* v. *Preston,* reported in Gilmer, p. 228. But it is insisted that that decision was wrong in principle, and has been repeatedly discredited, and in fact, overruled, by this court.

That case has been criticised by members of this court, but it has never been directly overruled, and the circuit court, no doubt, as is argued, felt that it was its duty to follow it.

In that case, which was a motion by the treasurer of the state against a former treasurer, who had defaulted, and the sureties on his bond, it was held that the books kept by the treasurer were conclusive evidence of the balance actually in the treasury at any time, both against the treasurer and his sureties, so as to charge them with balances carried forward from year to year, as if those balances were actually in hand. The conclusion in that case was based upon the assumption that a judgment against the principal concludes his sureties, and, for that reason, the evidence on which such judgment was rendered ought also to conclude them.

In the case of *Munford* v. *Overseers of Poor,* 2 Rand. 313, Judge Green said, that the question, how far sureties are bound by a judgment or other evidence against their principal which estops or concludes him, had never, so far as he was informed, been settled in this court, except in the case of *Baker* v. *Preston* and his sureties, and that neither of the cases relied on in that case, to show that a judgment against the principal was conclusive upon his sureties, sustains that conclusion.

In the case of *Jacobs v. Hill,* 2 Leigh 393, it was held that a judgment confessed by the sheriff, with the assent of his deputy, against the sheriff for the deputy's default, but without the knowledge of the latter's sureties, was ample evidence of the fact of the deputy's default, and charged his sureties unless disproved by them.    That decision was understood by Judge

Tucker as holding that the judgment was only *prima facie* correct, and not conclusive against the sureties (*Henrico Justices* v. *Turner,* 6 Leigh 116) ; but Judge Moncure, in *Crawford &c.* v. *Turk,* 24 Gratt. 172, 184, in construing what was decided in *Jacobs* v. *Hill,* said: "The proceeding was upon the official bond of a deputy sheriff, which was, to some extent, an indemnifying bond, and somewhat, though not precisely, like the bond in this case. It was not necessary to decide, and was not decided, in that case, that the judgment against the sheriff was not conclusive against the sureties of the deputy; but it was sufficient to decide, as it was decided, that said judgment was *prima facie* evidence against them. The remark of Judge Carr, in delivering the opinion of the court, that, 'this, we think, was ample evidence of the fact and charged his sure-' ties, unless disproved by them,' was extra-judicial as to the concluding words 'unless disproved by them,' and seems, in that respect, to have been made without adverting to the distinction noticed by Judge Green as before mentioned," (in the case of *Munford* v. *Overseers &c., supra.*)

In the case of *Henrico Justices* v. *Turner, supra,* it was held that a verdict and judgment against an executor or administrator were not conclusive evidence against his surety. President Tucker, who dissented in part in that case, said, in discussing the decision in *Baker* v. *Preston,* that it turned upon the conclusiveness of the books of the treasurer, and not upon any previous verdict or judgment against the principal, though Judge Roane relied on the two cases just cited (*Braxton* v. *Winslow,* 1 Wash. 31, and *Greensides* v. *Benson,* 3 Atk. 248) to sustain his opinion. "That opinion," he continues, "has not been very acceptable to the profession. It was most ably combatted at the time by one of the most distinguished judges of the general court, then sitting as a member of the special court of appeals, which decided the cause." Judge Tucker's conclusion was, that it was doubtful whether the decision in *Baker* v. *Preston* could be sustained upon any ground.

We have been cited to no other decision of this court, nor have we found one in our investigation which refers to *Baker* v. *Preston.*

In *Cox* v. *Thomas,* 9 Gratt. 312, 323, *Board of Supervisors* v. *Dunn,* 27 Gratt. 608, and *Carr* v. *Meade,* 77 Va. 142, records showing the liability of the principal to which the sureties were not parties, were held to be *prima facie* evidence against the sureties.

In the case of *Crawford* v. *Turk,* 24 Gratt. 176, which was an action by a sheriff against his deputy and the latter's sureties for his default, a judgment rendered against the sheriff in an action for the deputy's default, at the trial of which the deputy was present and took part in the defense, was held conclusive not only against the deputy, but his sureties, who had no notice of the proceeding in which the judgment was rendered. But the bond in that case provided, not only that the deputy should faithfully discharge the duties of his office, but should also indemnify and save harmless the sheriff and all other persons from all loss and damage arising from his conduct as deputy; and upon this latter provision or condition, the conclusion reached in that case was largely, if not entirely, based.

A settlement made under the provisions of section 862 of the Code of 1887, ascertaining what balances due the county are in the hands of the treasurer at the date of the settlement, may be of equal, but is of no higher, dignity than a judgment rendered against the treasurer in a proceeding against him for the same indebtedness. The general rule is that judgments bind conclusively parties and privies, because privies, whether in blood, in estate, or in law, claim under the person against whom the judgment is so rendered, and as they claim his rights, they are, of course, bound as he is. But, as a general rule, a judgment is not conclusive upon other persons, because it would be unjust to bind one by a proceeding in which he had no opportunity to make defense, and in which he could not appeal if dissatisfied with the judgment rendered therein. See *Munford* v. *Overseers*

&c. of *Nottoway Co.,* 2 Rand. 313, 318; *Stinchcomb* v. *Marsh,* 15 Gratt. 202, 204; *Downer* v. *Morrison,* 2 Gratt, 250; Note 2 Smith's Lead. Cas. (5th ed.), 683.

The true view of the law would seem to be, and the older decisions so hold, that sureties are not regarded in any sense as in privity with their principal, (*Munford* v. *Overseers &c., supra.* 2 Smith's Lead. Cas., 685; 7 Rob. Pr. 142, &c.); but in the later cases (our own as well as those of other jurisdictions) it is held that an engagement by one man to be responsible for another, creates such privity between them as to render a recovery against the latter *prima facie* evidence against the former. 2 Smith's Lead. Cas. 685 and cases cited; *Cox* v. *Thomas, supra; Board of Sup.* v. *Dunn, supra; Carr* v. *Meade, supra.*

While the general rule is as stated, that none are conclusively bound by a judgment except those who were parties or standing in privity with those who were, there are exceptions to the rule as well settled as the rule itself. *Baylor* v. *DeJarnette,* 13 Gratt. 152, 164.

Among the well-settled exceptions to the general rule, in which parties are conclusively bound by judgments in proceedings to which they are not parties, are cases of contracts of indemnity, or in the nature of contracts of indemnity, or in those cases in which a person, although not in form a party to the suit, is bound to assist in the prosecution or defense, and either does so in fact, or, when called upon to prosecute or defend, as the case may be, fails to do so. See *Munford* v. *Overseers &c., supra; Crawford* v. *Turk, supra;* 2 Smith's Lead. Cas., 685-6; 7 Rob. Pr. 150-2; *Morgan* v. *Haley, ante,* p. 331.

None of the bonds executed by Stone were bonds of indemnity, nor in the nature of contracts of indemnity. The condition in each was, that he should faithfully discharge the duties of his office or trust. We are of opinion, therefore, that the settlements made by Stone, treasurer, with the board of supervisors were not conclusive, but only *prima facie* evidence of the

balance in his hands at the date of said settlements respectively.

Having reached the conclusion that the settlements made by Stone, treasurer, under the provisions of section 862 of the Code, were only *prima facie* evidence against the sureties on his bonds at the date of such settlements, respectively, we are of opinion that the appellant, under the allegations of its bill, had the right to have the proceedings at law enjoined, in order that it might make its defense in a court of equity.

It may be that the appellant might have been able to make its defense at law, but it seems plain that its remedy there would have been far less adequate and complete than in equity, where all necessary accounts could be taken and the rights of all concerned ascertained and determined in a single suit.  See *National L. Ass.* v. *Hopkins,* 97 Va. 167, 171, 33 S. E. 539; *Va. Min. Co.* v. *Wilkinson,* 92 Va. 98, 100, 22 S. E. 839.

Most of the questions raised in this case were not passed upon by the circuit court, because, in the view it took of the conclusiveness of the treasurer's settlements as to his sureties, it was unnecessary to do so.  This court having reached a different conclusion as to the effect of his settlements, those questions become material; and as the oral and the written arguments here were, for the most part, devoted to the discussion of the effect of said settlements, and but comparatively little attention paid to the other questions, this court is of opinion that it would be better for all parties in interest for it not to pass upon any of the questions involved in this appeal, except the effect of such settlements and the jurisdiction of the court, but to leave all other questions open and remand the cause to the circuit court for further proceedings, where all the other questions, most of which depend largely upon matters of fact, can be carefully considered after full argument, and where, if error has been or be committed, there will be a better opportunity to have it corrected than there is in this court, whose decisions are final unless the error is discovered within the time allowed for a rehearing.

We are of opinion, therefore, to reverse the decree appealed from and remand the cause for further proceedings, to be had not in conflict with the views expressed in this opinion.

*Reversed.*