Present:  All the Justices

AMERICAN SAFETY CASUALTY
INSURANCE COMPANY

v.  Record No. 032709  OPINION BY JUSTICE CYNTHIA D. KINSER
                                September 17, 2004
C.G. MITCHELL CONSTRUCTION,
INC., ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge

In this action for breach of contract and recovery on a payment bond, the primary issue is whether the circuit court erred by entering judgment against a surety in favor of a claimant under the payment bond after determining that a judgment by default previously entered by the court against the principal as a sanction for failing to obey an order regarding discovery was binding on the surety. Because the surety had notice of the claim against its principal, and the right and opportunity to defend the principal against the claim, we conclude that the judgment by default against the principal was binding on and conclusive as to the surety.  Thus, we will affirm the circuit court's judgment.

RELEVANT FACTS AND PROCEEDINGS

C.G. Mitchell Construction, Inc. ("Mitchell") entered into an agreement with Nations Environmental Services, Inc. ("Nations") to provide labor, equipment and debris removal

services in connection with the demolition of the Richmond Convention Center Exhibition Hall (the "Project") in the City of Richmond. Nations was a subcontractor on the Project and was required, pursuant to its contract with the prime contractor, to procure a "Labor and Material Payment Bond" (the "Bond").[1] Nations obtained the Bond from American Safety Casualty Insurance Company ("American Safety"). The Bond named the prime contractor as the "Obligee," and Mitchell was a "Claimant" as that term was defined in the Bond.[2]

Nations along with Janet C. Williams and Chijioke Ude, president and vice-president, respectively, of Nations, also entered into a "General Agreement of Indemnity" (the

---

[1] Requiring a payment bond by Nations, as a subcontractor, is authorized in Code § 2.2-4337(F). The purpose of Code § 2.2-4337 is to protect those who furnish supplies, materials, and labor for the construction of public improvements, irrespective of whether those items were furnished to the prime contractor or a subcontractor. See Solite Masonry Units Corp. v. Piland Constr. Co., 217 Va. 727, 730, 232 S.E.2d 759, 761 (1977) (decided under a predecessor to Code § 2.2-4337); Thomas Somerville Co. v. Broyhill, 200 Va. 358, 363, 105 S.E.2d 824, 828 (1958) (same).

[2] In pertinent part, the Bond defined the term "Claimant . . . as one having a direct contract with the Principal or with a subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance" of the subcontract between Nations and the prime contractor.

2

"Indemnity Agreement") with American Safety.[3]  As pertinent

to the issues on appeal, the Indemnity Agreement included

the following provisions with regard to the rights granted

to American Safety:

> ASSIGNMENT.  A. The CONTRACTOR [Nations], and the INDEMNITORS [Williams and Ude] as their interests may appear in the following subsections of this paragraph, hereby assign, transfer, pledge and set over to SURETY [American Safety] . . . (i) All the rights of the CONTRACTOR or INDEMNITORS in, and arising in any manner out of any CONTRACT; . . . (iv) All the right, title and interest of the CONTRACTOR or INDEMNITORS in and to any actions, causes of action, claims or demands . . . arising out of or in connection with any CONTRACT . . . .  B. SURETY shall have the full and exclusive right (but not the obligation), in its name or in the name of the CONTRACTOR or INDEMNITORS, to prosecute, compromise, release or otherwise resolve any of the claims, causes of action or other rights assigned to SURETY, upon such terms as SURETY, in its sole discretion shall deem appropriate.  C. The CONTRACTOR and INDEMNITORS hereby irrevocably nominate, constitute, appoint and designate the SURETY . . . as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the CONTRACTOR and INDEMNITORS assigned, transferred and set over to SURETY in this Agreement, and in the name of the CONTRACTOR and INDEMNITORS to make, execute, and deliver any and all additional or other assignments, documents, papers, . . . or other instruments . . . deemed necessary and proper by the SURETY in order to give . . . the full protection intended to be herein given to the SURETY under all other provisions of this Agreement.  The CONTRACTOR and INDEMNITORS hereby ratify and confirm all acts and actions taken and done by SURETY . . . as such attorney-in-fact.

> . . . .

---

[3] Williams and Ude executed the Indemnity Agreement as individual indemnitors.

REMEDIES UPON DEFAULT. A. In the event of any EVENT OF DEFAULT as described in this Agreement, SURETY shall have the right, at its option, and in its sole and absolute discretion . . . to take any one or more of the following actions: . . . (vii) in its name or in the name of the CONTRACTOR or Indemnitors to adjust, settle or compromise any . . . suit or judgment involving any BOND or to take whatever other action it may deem necessary . . . with respect to such matter. SURETY'S determination as to whether any such . . . suit . . . should be settled or defended shall be binding and conclusive upon the CONTRACTOR and INDEMNITORS.

Pursuant to its contract, Mitchell was to supply Nations with daily tickets outlining the work performed and Nations was to compensate Mitchell for its work on a "time and materials" basis. Mitchell would periodically invoice Nations based upon the totals from the daily tickets. According to Mitchell, Nations breached the contract by refusing to pay Mitchell the sums due on the invoices.

Consequently, Mitchell filed a motion for judgment against both Nations and American Safety. Mitchell alleged that Nations had breached the contract between them and was indebted to it for the sum of $312,500.09, plus interest.[4] Mitchell also alleged that American Safety was obligated to make payment to Mitchell under the Bond for all labor, material, and equipment it had supplied to Nations on the

---

[4] Along with the motion for judgment, Mitchell filed a statement of account and affidavit verifying the amount owed to it by Nations in accordance with Code § 8.01-28.

4

Project.  Nations and American Safety each filed grounds of defense, denying any indebtedness to Mitchell.[5]

More than a year after Mitchell filed its action, Nations' attorney moved to withdraw as counsel of record for Nations.  The circuit court granted the motion.  No attorney has since entered an appearance on behalf of Nations.  Nations' registered agent also resigned, and the State Corporation Commission terminated Nations' corporate status in December 2002.

Pursuant to Rule 4:5(b)(6), Mitchell subsequently gave notice that it would take the deposition of a corporate designee of Nations.  However, no corporate designee from Nations appeared at the scheduled deposition even though Mitchell effected proper service.  Consequently, Mitchell filed a motion for sanctions and/or to compel a corporate designee of Nations to appear for a deposition.  At a hearing on the motion, the circuit court learned that Williams and Ude had resigned as officers and directors of Nations.  American Safety suggested to the court that, since Williams and Ude were the only persons with knowledge of the matters set out in the deposition notice, Mitchell could obtain the needed information by issuing subpoenas to

---

[5] American Safety also filed a cross-claim against Nations and a third-party motion for judgment against Williams and Ude.

Williams and Ude in their individual capacities and deposing them about their personal knowledge.  The circuit court granted Mitchell's motion and directed a corporate designee of Nations to appear for a Rule 4:5(b)(6) deposition.

Mitchell subsequently gave notice that it would take the deposition of Nations' corporate designee and effected proper service of the notice.  Again, no corporate designee appeared for the scheduled deposition.  Consequently, Mitchell moved for sanctions, including judgment by default, against Nations for its failure to comply with the circuit court's prior order directing a corporate designee from Nations to appear for a deposition.

At a hearing on the motion, American Safety again represented to the circuit court that a deposition of a corporate designee was not necessary because Williams and Ude could be deposed about their personal knowledge.  American Safety also argued that judgment by default against Nations was not appropriate because, other than the affidavit attached to the motion for judgment, Mitchell had not presented evidence to prove its claimed damages against Nations and because genuine issues of material fact existed as to the amount that Nations owed Mitchell.

6

The circuit court found that Nations violated the prior order when a corporate designee failed to appear at the Rule 4:5(b)(6) deposition after receiving proper notice. Thus, the circuit court granted Mitchell's motion for sanctions. It entered judgment by default in favor of Mitchell against Nations in the amount of $312,500.09, plus interest and costs.

Mitchell then filed a motion for summary judgment against American Safety. At a hearing on that motion, American Safety argued that the judgment by default should not be conclusive against it or even introduced into evidence because American Safety did not have the ability to make a corporate designee from Nations appear at a Rule 4:5(b)(6) deposition. American Safety further argued that it had a right to present a defense to Mitchell's claim.

In a final order, the circuit court found that American Safety had notice of Mitchell's claim against Nations and had the right and opportunity to defend Nations. Accordingly, the circuit court concluded that the judgment by default entered against Nations was binding and conclusive upon the surety, American Safety. Thus, the court granted Mitchell's motion for summary judgment and entered judgment in favor of Mitchell against American Safety in the amount of $312,500.09, plus interest and

7

costs, subject to offsets in the amount of $57,110.86 for claims against the Bond by subcontractors and vendors to Mitchell that American Safety had already resolved. This appeal followed.

ANALYSIS

On appeal, American Safety challenges the circuit court's actions granting Mitchell's motion to compel the deposition of a corporate designee of Nations, granting Mitchell's motion for sanctions and judgment by default against Nations, and entering summary judgment against American Safety. On brief, American Safety describes the primary issue as whether the circuit court could use "a default judgment imposed as a discovery sanction against a defunct corporation, without more, to impose" liability upon a surety. American Safety's framing of the issue, however, omits two unchallenged findings by the circuit court: (1) American Safety had notice of Mitchell's claim against Nations; and (2) American Safety had both the right and opportunity to defend Nations. Thus, the issue, properly stated, is whether the judgment by default entered against Nations is binding on American Safety when American Safety, as the surety, had notice of the claim against its principal, Nations, and the right and opportunity to defend Nations.

Under the terms of the Indemnity Agreement, Nations assigned to American Safety its right and interest in any cause of action or claim arising out of or in connection with any contract.[6]  Nations also appointed American Safety as its "attorney-in-fact with the right, but not the obligation, to exercise all of the rights" of Nations assigned to American Safety and "in the name of [Nations] to make, execute, and deliver any and all additional or other assignments, documents, papers, . . . deemed necessary and proper by [American Safety] in order to give . . . the full protection intended to be herein given to [American Safety]."  Finally, under the Indemnity Agreement, American Safety had the right, upon any default, to take action in its name or in Nations' name "to adjust, settle or compromise any . . . suit or judgment involving any BOND or to take whatever other action it may deem necessary . . . with respect to such matter."  As the circuit court found, these provisions in the Indemnity Agreement provided American Safety with the right to take any measures it deemed necessary and proper in order to defend Nations in the action brought by Mitchell.

[6] The Indemnity Agreement defines the term "CONTRACT" as "an agreement between CONTRACTOR and a third party . . . for which SURETY executes . . . a BOND."  Nations' subcontract with Mitchell is a "CONTRACT" under the Indemnity Agreement.

Despite this authority and the fact that American Safety, as a defendant in the action brought by Mitchell, had notice of Mitchell's claim against Nations, American Safety never designated or even attempted to designate a corporate representative on behalf of Nations. In other words, it did nothing on Nations' behalf to comply with the circuit court order directing a corporate designee to appear at a Rule 4:5(b)(6) deposition. Nor did American Safety argue that it did not have the authority under the Indemnity Agreement to do so. In fact, American Safety did not make that argument until the hearing on Mitchell's motion for summary judgment, which was after the circuit court had entered judgment by default against Nations. However, American Safety appeared at the hearing on Mitchell's motion to compel the appearance of Nations' corporate designee at a deposition as well as the hearing on Mitchell's motion for sanctions.

Nevertheless, American Safety argues that the circuit court erred by treating the judgment by default conclusive as to American Safety's liability on the Bond and thereby preventing American Safety from contesting the amount of damages claimed by Mitchell. Relying on this Court's decisions in Munford v. Overseers of the Poor of Nottoway, 23 Va. (2 Rand.) 313 (1824); Hobson v. Yancey, 43 Va. (2

10

Gratt.) 73 (1845); and United States Fid. & Guar. Co. v. Jordan, 107 Va. 347, 58 S.E. 567 (1907), American Safety asserts that "a final judgment, entered after a trial on the merits against a principal, has served under Virginia law as no more than 'prima facie evidence' against a surety."  We are not persuaded by American Safety's argument.

In Munford, a jury found that Munford had been appointed and qualified as sheriff but had not been appointed by the Overseers of the Poor to collect the poor-rates, unless a judgment previously entered against him as collector was conclusive evidence of that fact.  23 Va. at 315.  The issue was whether that prior judgment against Munford "precluded and estopped the sureties from giving any evidence going to contradict" Munford's appointment. Id.  In holding that the judgment against Munford was not conclusive evidence against the sureties as to the fact of his appointment to collect the poor-rates, the Court stated that it would be improper to hold "the sureties conclusively bound by a judgment against the principal, which they had no opportunity to resist or impeach."  Id. at 320.

In Hobson, the children and legatees of a decedent obtained a decree against the executor of the estate.  43

11

Va. at 75.  Execution was issued on the decree and returned "nulla bona."  Id.  The parties in whose favor the decree had been rendered then instituted a suit against the sureties of the executor to recover the amount due under the decree.  Id.  The sureties argued that they were not responsible for certain rents from real estate that had been charged to the executor in the prior decree.  Id. at 77.  This Court concluded that the trial court had not properly inquired into the credits that the executor was entitled to receive and therefore remanded the suit for further proceedings.  Id. at 80.  There, as in Munford, there was no indication that the sureties had any notice of or the opportunity to defend the executor in the first proceeding brought only against the executor.

Finally, in Jordan, the trial court decided that a settlement by a treasurer for moneys due the county was conclusive proof against the treasurer's surety.  107 Va. at 352, 58 S.E. at 567.  On appeal, this Court reversed, holding that the treasurer's settlement with the county was "not conclusive, but only prima facie evidence of the balance in his hands."  Id. at 356-57, 58 S.E. at 569. Treating the settlement as having no higher dignity than a judgment, we explained that judgments generally bind only parties and privies and are "not conclusive upon other

12

persons, because it would be unjust to bind one by a proceeding in which he had no opportunity to make defense, and in which he could not appeal if dissatisfied with the judgment rendered therein." Id. at 355, 58 S.E. at 568. The general rule, however, is subject to exceptions such as in "cases of contracts of indemnity, or in the nature of contracts of indemnity, or in those cases in which a person, although not in form a party to the suit, is bound to assist in the prosecution or defense, and either does so in fact, or, when called upon to prosecute or defend, as the case may be, fails to do so." Id. at 356, 58 S.E. at 569. The bond at issue in Jordan was not a bond of indemnity, and as in Munford and Hobson, the surety had no opportunity to participate in or defend the treasurer in the settlement of funds due the county.

Unlike American Safety, none of the sureties in those cases had notice of the claim against its principal and both the right and opportunity to defend the principal against the claim. Thus, Munford, Hobson, and Jordan are inapposite. They are not controlling or persuasive authority on the issue before us.

However, we do find the decision in Drill South, Inc. v. International Fid. Ins. Co., 234 F.3d 1232 (11th Cir. 2000), both persuasive and apposite. That case involved an

action on a payment bond in a federal construction project. Id. at 1234. In response to a motion for default judgment against the principal, the surety "stated that it took no position on a default judgment against its principal . . . provided that the default judgment was not deemed binding on [the surety]." Id. After the trial court entered default judgment against the principal, the court concluded that the surety was bound by that judgment. Id. at 1235. On appeal, the surety argued that "default judgments against a bond principal are not binding on a co-defendant surety actively defending in the same action." Id. The court disagreed, explaining "the general rule that has emerged is that a surety is bound by any judgment against its principal, default or otherwise, when the surety had full knowledge of the action against the principal and an opportunity to defend." Id.; accord Frederick v. United States, 386 F.2d 481, 485 n.6 (5th Cir. 1967); Lake County v. Massachusetts Bonding & Ins. Co., 75 F.2d 6, 8 (5th 1935); Massachusetts Bonding & Ins. Co. v. Central Finance Corp., 237 P.2d 1079, 1081 (Colo. 1951); Von Engineering Co. v. R.W. Roberts Constr. Co., 457 So.2d 1080, 1082 (Fla. Dist. Ct. App. 1984); First Mobile Home Corp. v. Little, 298 So.2d 676, 682-83 (Miss. 1974); contra United States ex rel. Fidelity Nat'l Bank v. Rundle, 107 F. 227, 229 (9th

Cir. 1901); United States ex rel. Vigilanti v. Pfeiffer-Neumeyer Constr. Corp., 25 F. Supp. 403, 405 (E.D.N.Y. 1938); Gearhart v. Pierce Enters., Inc., 779 P.2d 93, 95 (Nev. 1989).

Applying that rule, the court in Drill South found that the surety had full knowledge of the potential default judgment against its principal and numerous opportunities to defend the principal against the merits of the claim and the extent of liability. 234 F.3d at 1235-36. The court further found that the surety had the legal right to step in and defend its principal at every stage of the proceedings pursuant to an indemnity agreement with its principal. Id. at 1236. Under that agreement, the principal had designated the surety as its "attorney-in-fact," which gave the surety the " 'right to adjust, settle, or compromise any claim, demand, suit or judgment upon the [payment bond].' " Id. Thus, the court affirmed the judgment against the surety. Id. at 1240. In doing so, the court rejected the surety's argument that it was not obligated to defend the action against its principal. Id. at 1236. The issue, according to the court, was not whether the surety had an obligation to defend under the terms of the indemnity agreement but whether it had the right to do so. Id.

Turning to the present case, we conclude that American Safety is bound by the judgment by default entered against Nations. Like the surety in Drill South, American Safety had notice of Mitchell's claim against Nations and the opportunity to defend Nations. It also clearly had the right to do so under the terms of the Indemnity Agreement. In our view, it does not matter that the judgment by default was entered as a discovery sanction or that the circuit court accepted Mitchell's affidavit as evidence of the amount of Nations' indebtedness. "The law requires only that a surety have notice and an opportunity to defend before it is bound by a judgment against its principal." Id. Thus, the circuit court did not err in granting Mitchell's motion for summary judgment and entering judgment against American Safety.

American Safety also challenges the circuit court's order directing a corporate designee of Nations to appear at a deposition and the order entering judgment by default against Nations as a discovery sanction. In both instances, the circuit court was dealing with discovery issues and abuses. A trial court generally exercises "broad discretion" in resolving such matters. Woodbury v. Courtney, 239 Va. 651, 654, 391 S.E.2d 293, 295 (1990). On appeal, we accord deference to a trial court's decision

16

regarding discovery disputes and will set aside that decision only if the court abused its discretion.  See Walsh v. Bennett, 260 Va. 171, 175, 530 S.E.2d 904, 907 (2000).  Here, we cannot say that the circuit court abused its discretion in entering either of those orders.

As to the order requiring a corporate designee of Nations to appear at a deposition, American Safety argues that the circuit court abused its discretion in compelling an act by a defunct corporation when Mitchell could have obtained the information it needed by deposing Williams and Ude in their individual capacities.  However, the termination of Nations' corporate status did not impair Mitchell's remedy against Nations.  Under Code § 13.1-755, "[t]he termination of corporate existence shall not take away or impair any remedy available to or against the corporation, its directors, officers or shareholders, for any right or claim existing or any liability incurred, prior to such termination."  This statutory provision, which partially changed the common law, see Harris v. T.I., Inc., 243 Va. 63, 68, 413 S.E.2d 605, 608 (1992), further provides that "[a]ny such action . . . by or against the corporation may be prosecuted or defended by the corporation in its corporate name," and "[t]he shareholders, directors and officers shall have power to

17

take such corporate or other action as shall be appropriate to protect such remedy, right or claim." Code § 13.1-755. In addition, upon the involuntary termination of a corporation's existence, "the properties and affairs of the corporation shall pass automatically to its directors as trustees in liquidation." Code § 13.1-753; see also Code § 13.1-752. Given these statutory provisions, the circuit court did not abuse its discretion by compelling Nations to designate a corporate representative to appear at a Rule 4:5(b)(6) deposition.

Contrary to American Safety's argument, deposing Williams and Ude in their individual capacities would not have had the same legal effect as deposing one or both of them as Nations' corporate designee. In accord with Rule 4:5(b)(6), Mitchell "designate[d] with reasonable particularity the matters on which examination [was] requested" in its notice of deposition. Nations was then required to designate one or more officers or other persons to testify on its behalf, and it could have set forth the matters on which each designated person would testify. Id. The person designated by a corporation to testify on its behalf must "testify as to matters known or reasonably available to the organization." Id. Thus, the designated person gives testimony about the knowledge and memory of

18

the corporation, not his or her personal knowledge.  See United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C. 1996) (decided under F.R.C.P 30(b)(6), which is in all pertinent respects identical to Rule 4:5(b)(6)); accord The Paul Revere Life Ins. Co. v. Jafari, 206 F.R.D. 126, 127 (D. Md. 2002)(same); see also Black Horse Lane Assoc., L.P. v. Dow Chemical Corp., 228 F.3d 275, 303 (3d Cir. 2000)(same).

Finally, with regard to the circuit court's order entering judgment by default against Nations as a discovery sanction, American Safety contends that, absent a showing of prejudice by Mitchell, the court's choice of sanction was too severe.  American Safety also contends that Mitchell seized upon Nations' defunct status to give notice of a Rule 4:5(b)(6) deposition knowing that Nations could not designate someone to testify on its behalf at a deposition, thereby setting in motion events that allowed it to obtain the judgment against Nations without ever having to present evidence in a trial.  However, one of the sanctions authorized under Rule 4:12(b)(2)(C) when a party fails to obey an order to provide discovery is "judgment by default against the disobedient party."  Mitchell sought through a Rule 4:5(b)(6) deposition to explore, among other things, the basis of Nations' denials in its grounds of

defense and its answers to interrogatories.  Mitchell was deprived of that opportunity.  Thus, we cannot say that the circuit court abused its discretion in choosing to enter judgment by default against the disobedient party, Nations. See Woodbury, 239 Va. at 654, 391 S.E.2d at 295 (trial court did not abuse its discretion in granting partial summary judgment for defendant when plaintiff failed to timely identify expert witnesses).  Given the circumstances of this case, it is doubtful that any lesser sanction would have remedied the problem posed by Nations' failure to obey the circuit court's order compelling the appearance of its corporate designee at a deposition.

We also point out that American Safety had notice of every step in the proceedings that led to the entry of those two orders.  In fact, counsel for Mitchell wrote American Safety's counsel in order to obtain available dates before scheduling both the first and the second deposition of Nations' corporate designee.  But, as previously stated, American Safety never attempted to designate a corporate representative to appear at a deposition on behalf of Nations.  It was not until the hearing on Mitchell's motion for summary judgment that American Safety even argued that it did not have the

authority under the Indemnity Agreement to make that designation.

CONCLUSION

We hold that a surety is bound by a judgment by default entered against its principal when the surety had notice of the claim against the principal and the opportunity and right to defend the principal.  Since American Safety was such a surety, we will affirm the judgment of the circuit court.[7]

Affirmed.

---

[7] In light of our decision, we do not consider American Safety's argument concerning collateral estoppel because that principle was not the basis of the circuit court's decision to enter summary judgment against American Safety.